UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| ZELOUF INTERNATIONAL CORP., | : | Case No. 15-11501 (SHL) |
| | : | |
| | : | |
| Debtor. | : | |
| | : | |

## DISCLOSURE STATEMENT FOR
## PLAN OF REORGANIZATION FOR ZELOUF INTERNATIONAL CORP.
## <u>PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE</u>

Klestadt Winters Jureller Southard & Stevens, LLP
200 West 41st Street, 17th Floor
New York, New York 10036
Tel: (212) 972-3000
Fax: (212) 972-2245

*Attorneys for the Debtor and Debtor in Possession*

Dated: New York, New York
      November 12, 2015

## <u>TABLE OF CONTENTS</u>

I.       PURPOSES AND LIMITATIONS OF DISCLOSURE STATEMENT ................1

     A.     Purpose of Disclosure Statement....................................................................1

     B.     Definitions and Exhibits ..........................................................................1

     C.     Enclosures ............................................................................................2

     D.     Representations and Limitations .................................................................2

     E.     Important Dates ......................................................................................3

     F.     Solicitation Procedures..............................................................................3

     G.     Recommendation....................................................................................3

     H.     Inquiries ..............................................................................................4

II.     BACKGROUND..........................................................................................4

     A.     Organizational Structure............................................................................4

     B.     Nature of the Debtor's Business..................................................................4

     C.     Pre-Petition Litigation ..............................................................................5

III.    SIGNIFICANT EVENTS DURING THE CHAPTER 11 CASE...........................7

     A.     Petition Date ..........................................................................................7

     B.     No Creditors' Committee ..........................................................................7

     C.     Retention of Professionals..........................................................................7

     D.     Schedules of Assets and Liabilities, Statement of Financial Affairs ..........7

     E.     The Dismissal Motion ..............................................................................7

     F.     Mediation and Settlement ..........................................................................8

     G.     Bar Date for Filing of Claims Arising Prior to the Petition Date................8

IV.    SUMMARY OF THE PLAN .........................................................................8

A.      General Plan Objectives .................................................................8

B.      Provisions Governing Order and Method for Distributions Under
        the Plan .........................................................................................9

C.      Classes of Claims and Interests ....................................................9

        1.    Administrative Claims ..........................................................10

        2.    Professional Fee Claims .......................................................10

        3.    Priority Tax Claims ..............................................................10

        4.    Class 1 (Non-Tax Priority Claims).......................................10

        5.    Class 2 (NZ Allowed Claim).................................................11

        6.    Class 3 (General Unsecured Claims).....................................12

        7.    Class 5 (Interests) .................................................................12

V.      MEANS OF IMPLEMENTING THE PLAN ......................................12

A.      Simultaneous Transactions ..........................................................12

B.      Vesting of Assets in Reorganized Debtor ...................................12

C.      Preservation of Causes of Action ...............................................12

D.      Insurance Preservation  ..............................................................13

E.      Execution of Documents to Effectuate Plan...............................13

F.      Section 1146 Exemption from Certain Transfer Taxes and
        Recording Fees ............................................................................13

G.      Exit Financing .............................................................................13

H.      Escrow Release.............................................................................14

I.      Plain Distributions.......................................................................14

J.      Post-Confirmation Date Governance and Management.............15

K.      Post-Confirmation Reports and Fees...........................................16

L.      Deadline for Filing Applications for Professional Fee Claims ................ 16

M.      Post-Confirmation Fees and Expenses ..................................................... 16

N.      Administrative Claim Bar Date ................................................................ 17

O.      Disallowance of Claims without Further Order of the Court ................... 17

VI.     EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............................ 17

A.      General Provisions ................................................................................... 17

B.      Cure of Defaults ...................................................................................... 17

C.      Effect of Assumption ............................................................................... 18

VII.    CONDITIONS PRECEDENT ............................................................................ 18

A.      Conditions to Confirmation ..................................................................... 18

B.      Conditions to Effective Date ................................................................... 18

C.      Waiver of Conditions .............................................................................. 19

VIII.   DISCHARGE; INJUNCTIONS; EXCULPATIONS ........................................... 19

A.      Discharge ................................................................................................. 19

B.      Injunction ................................................................................................. 19

        1.   Injunctions Against Interference with Consummation or
             Implementation of Plan ...................................................................... 19

        2.   Plan Injunction ................................................................................... 19

C.      No Bar To Claims Against Third Parties ................................................. 20

D.      Exculpation .............................................................................................. 21

E.      Releases of Liens, Claims and Emcumbrances ........................................ 21

F.      No Release of Plan Obligations ............................................................... 21

G.      No Modificatin of Res Judicata Effect .................................................... 21

IX.    PROCEDURES FOR DISTRUBTIONS UNDER PLAN ....................................22

    A.    Payments in U.S. Dollars ..........................................................................22

    B.    Distributions Only on Business Days........................................................22

    C.    Transmittal of Payments and Notices........................................................22

    D.    Record Date for Distributions ...................................................................22

    E.    Unclaimed Distributions............................................................................23

    F.    Claims Administration ...............................................................................23

       1.    Objections to Claims ......................................................................23

       2.    Reservation of Rights .....................................................................23

       3.    Filing Objections ............................................................................23

       4.    Determination of Claims ................................................................23

       5.    No Distribution Pending Allowance ...............................................24

    G.    Disputed Claims .........................................................................................24

    H.    Claims by Persons From Which Property is Recoverable .........................24

    I.    Timing of Distributions on Disputed Claims Subsequently Allowed.......25

    J.    Disputed Distribution ................................................................................25

    K.    Claims Filed After the Applicable Bar Date .............................................25

    L.    Amendment to Proof of Claims..................................................................25

    M.    Settoff and Recoupment .............................................................................25

    N.    Compliance with Tax Withholding and Reporting Requirements ............26

    O.    No Postpetition Interests on Claims ..........................................................26

X.    PLAN INTERPRETATION AND CONFIRMATION ........................................26

    A.    Procedures Regarding Objections to Designation of Classes as Impaired or Unimpaired..............................................................................................26

B.      Withdrawal and Modification of Plan .......................................26

C.      Governing Law .........................................................................26

D.      Presumed Acceptance of Plan ..................................................26

XI.      RETENTION OF JURISDICTION BY BANKRUPTCY COURT ....................27

XII.     CERTAIN TAX CONSEQUENCES OF THE PLAN.........................................28

A.      General ......................................................................................28

B.      Tax Consequences of Payment of Allowed Claims Pursuant to
         Plan Generally ..........................................................................29

         (i)     Recognition of Gain or Loss ...............................................29

         (ii)    Bad Debt or Worthless Security Deduction.......................29

XIII.    CONFIRMATION OF THE PLAN - REQUIREMENTS...................................29

A.      Absolute Priority Rule ..............................................................30

B.      Best Interest of Creditors Test; Liquidation Analysis .............30

XIV.     PROCEDURES FOR VOTING ON PLAN..........................................................31

XV.      CONFIRMATION HEARING ...........................................................................31

**PLEASE READ THIS DISCLOSURE STATEMENT CAREFULLY.  THIS DISCLOSURE
STATEMENT CONTAINS INFORMATION REGARDING THE PLAN WHICH IS
ENCLOSED WITH THIS DISCLOSURE STATEMENT.**

Zelouf International Corp. ("ZIC" or the "Debtor") submits this disclosure statement (the
"Disclosure Statement") pursuant to § 1125 of the Bankruptcy Code to accompany its Plan of
Reorganization for Zelouf International Corp. Pursuant to Chapter 11 of the Bankruptcy Code (the
"Plan"), which has been filed with the United States Bankruptcy Court for the Southern District of
New York (the "Bankruptcy Court").  A copy of the Plan is annexed as **Exhibit A** hereto.

**I.      PURPOSES AND LIMITATIONS OF DISCLOSURE STATEMENT**

   **A.   Purpose of Disclosure Statement**

The purpose of the Disclosure Statement is to set forth information that (i) summarizes
the Plan and alternatives to the Plan, (ii) advises holders of Claims[1] and Interests of their rights
under the Plan, (iii) if there are impaired creditors, provide information for such creditors to
make an informed decision on whether to vote to accept or to reject a plan; and (iv) assists the
Bankruptcy Court in determining whether the Plan complies with the provisions of chapter 11 of
the Bankruptcy Code and should be confirmed.

You are urged to read the Disclosure Statement in order to determine what rights you may
have with respect to the Plan and before making any decision on any such course of action.
Particular attention should be directed to the provisions of the Plan affecting or impairing your
rights as they existed before the filing of the Chapter 11 Case.  Please note, however, that this
Disclosure Statement cannot tell you everything about your rights.  For instance, this Disclosure
Statement cannot and does not provide a complete description of the financial status of the Debtor,
all of the applicable provisions of the Bankruptcy Code, or other matters that may be deemed
significant by creditors and other parties in interest.  You are also encouraged to consult with your
lawyers and/or advisors as you review and consider the Disclosure Statement and the Plan to enable
you to obtain more specific advice on how the Plan will affect you.

   **B.   Definitions and Exhibits**

Definitions   Unless otherwise defined herein, capitalized terms used in this Disclosure
Statement will have the meanings ascribed to such terms in the Plan.

Exhibits The following exhibits are annexed hereto and expressly incorporated herein:

Exhibit A:      A copy of the Plan
Exhibit B:      Liquidation Analysis
Exhibit C:      Projections

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Plan.

**C.** **Enclosures**

The following materials are included with this Disclosure Statement:

1. A copy of the notice of the date, time and place of the Confirmation Hearing and the deadline for filing objections to confirmation of the Plan (the "Confirmation Hearing Notice").

**D.** **Representations and Limitations**

NO PERSON IS AUTHORIZED TO GIVE ANY INFORMATION OR TO MAKE ANY REPRESENTATION OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS ANNEXED HERETO OR INCORPORATED HEREIN BY REFERENCE OR REFERRED TO HEREIN, AND IF GIVEN OR MADE, SUCH INFORMATION OR REPRESENTATION MAY NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE DEBTOR.

NO REPRESENTATIONS CONCERNING THE DEBTOR OR THE PLAN ARE AUTHORIZED OTHER THAN AS SET FORTH HEREIN.

THE INFORMATION CONTAINED HEREIN HAS BEEN PREPARED BY THE DEBTOR IN GOOD FAITH, BASED UPON UNAUDITED INFORMATION AVAILABLE TO THE DEBTOR AS OF THE DATE HEREOF. ALTHOUGH THE DEBTOR HAS USED ITS BEST EFFORTS TO ENSURE THAT SUCH INFORMATION IS ACCURATE, THE INFORMATION CONTAINED HEREIN IS UNAUDITED. THE DEBTOR BELIEVES THAT THIS DISCLOSURE STATEMENT COMPLIES WITH THE REQUIREMENTS OF THE BANKRUPTCY CODE.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED HEREIN, AND DELIVERY OF THIS DISCLOSURE STATEMENT SHALL NOT CREATE ANY IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN SINCE THE DATE OF THIS DISCLOSURE STATEMENT AND/OR THE DATE THAT THE MATERIALS RELIED UPON IN PREPARATION OF THIS DISCLOSURE STATEMENT WERE COMPILED.

NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE ADVICE ON THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON HOLDERS OF CLAIMS AGAINST OR INTERESTS IN THE DEBTOR.

THE DESCRIPTION OF THE PLAN CONTAINED IN THIS DISCLOSURE STATEMENT IS INTENDED AS A SUMMARY ONLY AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN ITSELF. EACH CREDITOR AND

2

INTEREST HOLDER IS ENCOURAGED TO READ, CONSIDER AND CAREFULLY ANALYZE THE TERMS AND PROVISIONS OF THE PLAN.

THIS DISCLOSURE STATEMENT AND THE PLAN PROVIDE FOR INJUNCTIVE RELIEF AS TO THE DEBTOR.  THE PERMANENT INJUNCTIONS SET FORTH IN THE PLAN WILL APPLY TO HOLDERS OF ANY CLAIM, INTEREST, LIEN, ENCUMBERANCE OR DEBT, WHETHER SECURED OR UNSECURED, GRANTED PRIORITY STATUS, INCLUDING PRIORITY TAX (FEDERAL OR STATE), NON-PRIORITY UNSECURED CLAIM OR ANY INTEREST IN THE DEBTOR. CREDITORS AND INTEREST HOLDERS WILL BE BOUND BY THIS INJUNCTIVE RELIEF UNLESS CREDITORS TIMELY FILE OBJECTIONS IN ACCORDANCE WITH THE PROVISIONS SET FORTH IN THE DISCLOSURE STATEMENT ORDER OR HEREIN AND APPEAR AT THE CONFIRMATION HEARING, TO PROSECUTE ANY OBJECTION.

## E.  Important Dates

The Bankruptcy Court has scheduled the Confirmation Hearing for December 17, 2015 at 10:00 a.m. Holders of Claims and Interests and other parties in interest may attend this hearing. Objections to confirmation of the Plan must be filed on or before December 10, 2015 as set forth in the Confirmation Hearing Notice.

## F.  Solicitation Procedures

Creditors holding Claims that are Impaired have the right to vote to accept or reject the Plan. Generally speaking, a Claim or Interest is Impaired if the Plan alters the legal, contractual or equitable rights of the holder of the Claim or Interest.

In this Chapter 11 Case, the Plan contains three (3) Classes of Claims and one (1) Class of Interests.  Class 1, 2 and 3 Claims and Class 4 Interests are not Impaired under the Plan and are conclusively presumed to have accepted the Plan pursuant to §1126(f) of the Bankruptcy Code.

With no Impaired Creditors, each Class of Claims and Interests under the Plan is conclusively presumed to accept the Plan.

BECAUSE ALL CLASSES OF CLAIMS AND INTERESTS ARE UNIMPAIRED UNDER THE PLAN, NO VOTES ARE BEING SOLICITED.

## G.  Recommendation

In the opinion of the Debtor, the treatment of creditors and interest holders under the Plan contemplates a greater recovery than that which is likely to achieved under any other alternative under chapter 11 or chapter 7 of the Bankruptcy Code. Accordingly, the Debtor submits that confirmation of the Plan is in the best interests of the Debtor's creditors and interest holders.

### H. Inquiries

If you have any questions about the packet of materials that you have received, please contact counsel for the Debtor, Klestadt Winters Jureller Southard & Stevens, LLP by telephone at (212) 972-3000 during normal business hours.

## II.    BACKGROUND

### A.    Organizational Structure

The Debtor is a corporation formed under the laws of the State of New York. It is a closely held corporation with two (2) shareholders: Danny Zelouf, who owns 75% of the stock in the Debtor; and Rony Zelouf, who owns 25% of the stock in the Debtor.

### B.    Nature of the Debtor's Business

ZIC is a fabric wholesale company. The Debtor's predecessor (as defined and described below "Old ZIC") engaged in the import of fabrics from various worldwide locations to the United States for sale to apparel manufacturers, primarily in New York City. The business model of Old ZIC was to import and maintain a substantial inventory of fabrics for resale to local apparel manufacturers. Under that business model, the company purchased inventory in advance and absorbed any losses for unsold inventory.

Beginning in the 1990s and continuing into the first decade of the 2000s, apparel manufacturers continued and accelerated a trend to cease manufacturing apparel in the United States and instead direct manufacturing to overseas locations. With this shift in the apparel industry, the model of purchasing and importing large volumes of fabric inventory became less profitable and the business model became obsolete as a result of manufacturing being done overseas.

Beginning in 2001, Old ZIC began to implement changes to reflect the changes it was experiencing in the marketplace. Most significantly, instead of relying on large purchases of inventory, Old ZIC began to acquire "samples" of fabrics. Old ZIC, using its connections in the fabric manufacturing community, primarily in South Korea and China, arranged for the drop shipment of fabric from the site of manufacture to the site where apparel was created, mostly in Bangladesh, China, India, Indonesia or Vietnam. Approximately 20% of fabrics purchased by the Debtor are shipped to the United States and stocked in a warehouse in New Jersey.

Since 2004, the Company has been completely transformed into a modern fabric company that caters to customers that design clothing in the United States and manufacture products abroad.

Now, the Debtor's core market is fabric for dresses for women and kids. Products manufactured with fabrics sourced by the Debtor are sold in middle-market department stores such as Macy's, JC Penney, Maurice's and Dress Barn. ZIC employs several designers and others to assist the Debtor's customers with fabric options incorporating fashion trends, price points and previous years' best-selling items. The Debtor typically purchases and imports

samples consisting of 50-100 yards of different fabrics in several colors for each item. The Debtor's customers then select the fabrics and colors they like and purchase a small quantity so that they can produce a few different garments that are then shown to the retailers. If a retailer likes a particular garment and color, the retailer will place an order with the Debtor's customer, and then the Debtor's customer will order the necessary fabric from the Debtor, and the Debtor then acquires the required fabric from its vendors, which is then shipped to a factory.

###    C.    Pre-Petition Litigation

The business of the Debtor was founded by Shafik Zelouf ("Shafik") and his son, Joseph Zelouf ("Joseph") in 1983, and incorporated under the name Zelouf International Corp. ("Old ZIC"). Shafik and Joseph each owned fifty percent (50%) of Old ZIC.

Later, Rony Zelouf ("Rony") became a shareholder of Old ZIC, with Shafik and Joseph each contributing 10% ownership interest in Old ZIC to Rony from their respective ownership interests. Emil Zelouf ("Emil") joined Old ZIC in the late 1980s as an employee, and became a shareholder in 2002 when Shafik granted him a 25% ownership interest in Old ZIC from his remaining ownership interest in Old ZIC. At the same time that Shafik granted Emil 25% of the ownership interests in Old ZIC, Shafik granted Joseph an additional 5% ownership interest, Rony an additional 5% ownership interest, and a 5% ownership interest in old ZIC to Danny Zelouf. When Joseph died in 2004, Danny Zelouf inherited his 45% ownership interest in Old ZIC.

In 2004, Emil suffered a stroke and became incapacitated. His wife, Nahal Zelouf ("Nahal"), then acquired Emil's 25% ownership interest in Old ZIC. Prior to and after his incapacitation, Emil was employed by Old ZIC, but never had any significant management role. Nahal was neither employed nor had any management role in Old ZIC.

In December 2009, Nahal brought a lawsuit alleging direct and derivative claims against Danny Zelouf and Rony Zelouf in the Supreme Court of the State of New York, New York County (the "State Court").

In August 2013, Danny Zelouf and Rony Zelouf, who then collectively owned 75% of the interests in Old ZIC, initiated a merger of Old ZIC with an entity then incorporated under the name ZIC Corp., which was wholly-owned by Danny Zelouf and Rony Zelouf (the "Merger"). The Merger contemplated that ZIC Corp. would acquire Nahal's interests in Old ZIC. In connection therewith, an advance payment of $1,245,000 was made to Nahal pursuant to section 623(g) of the New York Business Corporation Law ("BCL"). The State Court permitted the Merger to proceed, on the condition that Nahal had the opportunity to present the circumstances underlying the derivative claims as possible adjustments to value in a subsequent appraisal proceeding (the "Quasi-Derivative Claims"). The Merger was duly effected, upon which ZIC Corp. was the surviving entity and the existence of Old ZIC ceased. Thereafter, ZIC Corp. filed an amendment to its Certificate of Incorporation, changing its name from ZIC Corp. to Zelouf International Corp., which is the Debtor herein.

5

Following the Merger, the Debtor commenced an appraisal proceeding pursuant to section 623(h)(4) of the BCL to determine the value of Nahal's interests in Old ZIC. The Trial Court held a multi-day appraisal hearing beginning in March 2014, and issued a fair value ruling on October 6, 2014. The Debtor moved to set aside the ruling or in the alternative for reargument; Nahal cross-moved for reargument. The Trial Court partially granted and otherwise denied these motions on December 22, 2014.

Ultimately, a judgment for a total of $10,031,438.28 in favor of Nahal against the Debtor was entered on March 18, 2015 (the "Judgment"). The Judgment consists of the following components: (a) $705,005.00 as the unpaid fair value of Nahal's 25% interest in Old ZIC, plus interest at 4% per annum from October 22, 2013 through the date of judgment of $44,270.45, for a total of $749,275.45; (b) $3,749,850.00 for Nahal's share of the asserted derivative claims, plus pre-judgment interest of 9% per annum from July 1, 2007 through the date of judgment in the amount of $2,661,057.94, for a total of $6,410,907.94; (c) attorneys' fees and expenses incurred by Nahal in the amount of $2,870,608.64; and (d) costs and disbursements taxed by the Clerk in the amount of $646.25.

The Debtor invoked section 623(j) of the BCL. Section 623(j) of the BCL provides a mechanism to address payment of an award to a dissenting shareholder if the company was insolvent or would be rendered insolvent as a result because ZIC was unable to pay the full amount of the award to Nahal. Section 623(j) of the BCL allows the dissenting shareholder, upon notice of its applicability, to either (a) withdraw her election to receive payment on her shares; or (b) retain her status of claimant and if the company is liquidated, have distribution rights subordinate to creditors but superior to the non-dissenting shareholders, when the restrictions of section 623(j) are no longer present. If the dissenting shareholder does not act within thirty (30) days of the notice, the company can make the election.

ZIC strongly believes that the Judgment was premised on fundamental, reversible errors and filed a notice of appeal (the "Appeal"). In addition, the Debtor argued before to the State Court that section 623(h)(8) of the BCL provided a sixty (60) day period within which a judgment such as the Judgment can be paid, an exception to the general rule that judgments are payable, and thus enforceable, upon entry. The Trial Court declined to apply the provisions of section 623(h)(8) of the BCL.

ZIC also filed a Motion for a Stay ("Stay Motion") with the Supreme Court of the State of New York, Appellate Division, First Department (the "Appellate Division") on May 18, 2015. A hearing was held on May 19, 2015 on the Stay Motion. The Appellate Division declined to grant an immediate stay, and directed further submissions on the Stay Motion to be filed on or before June 2, 2015. As of the Petition Date, the Stay Motion was *sub judice*.

However, even before the May 19, 2015 hearing, Nahal served a Restraining Notice (each a "Restraining Notice") and Information Subpoena (each an "Information Subpoena") on the Debtor, certain of the Debtor's customers, and banking institutions. The Restraining Notice had the potential effect of crippling the Debtor's business by preventing the payment of ordinary and necessary business expenses and by disrupting cash flow from its customers.

6

On June 8, 2015, the Debtor was notified that its bank account at Capital One, N.A. had been frozen as a result of Capital One's receipt of a Restraining Notice. The freeze rendered operation of the Debtor without the intervention of the Appellate Division or a Chapter 11 bankruptcy filing impossible.

## III.   SIGNIFICANT EVENTS DURING THE CHAPTER 11 CASE

### A.   Petition Date

On June 8, 2015, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

### B.   No Creditors' Committee

No statutory committee of creditors was appointed in the Chapter 11 Case.

### C.   Retention of Professionals

On August 26, 2015, the Bankruptcy Court entered an order authorizing the Debtor to retain Klestadt Winters Jureller Southard & Stevens, LLP as bankruptcy counsel *nunc pro tunc* to June 8, 2015.

On August 26, 2015, the Bankruptcy Court entered an order authorizing the Debtor to retain CBIZ Accounting, Tax and Advisory of New York, LLC and CBIZ Valuation Group, LLC as financial advisors *nunc pro tunc* to June 15, 2015.

On October 14, 2015, the Bankruptcy Court entered an order authorizing the Debtor to retain Pryor Cashman LLP as special corporate/finance counsel *nunc pro tunc* to August 26, 2015.

### D.   Schedules of Assets and Liabilities, Statement of Financial Affairs

On July 17, 2015, the Debtor filed schedules of the Debtor's assets and liabilities and a statement of the Debtor's financial affairs (collectively the "Schedules"). The Schedules were subsequently amended on August 26, 2015.

### E.   The Dismissal Motion

On July 6, 2015, Nahal filed Nahal Zelouf's Motion Seeking (I) to Dismiss the Debtor's Chapter 11 Case Pursuant to 11 U.S.C. § 1112, (II) for the Court to Abstain from and Dismiss the Debtor's Chapter 11 Case Pursuant to 11 U.S.C. § 305, (III) to Appoint a Chapter 11 Trustee Pursuant to 11 U.S.C. § 1104, or (IV) Adequate Protection Pending the Appeal (the "Dismissal Motion").

A hearing on the Dismissal Motion was held on August 4, 2015. At the conclusion of the August 4, 2015 hearing, the parties agreed to engage in mediation in an effort to resolve the Dismissal Motion and the issues that led the Debtor to file its Chapter 11 Case.

**F.    Mediation and Settlement**

Hon. James L. Garrity, United States Bankruptcy Judge, was appointed as mediator (the "Mediator").

The Mediator engaged the parties in settlement discussions that spanned more than fifteen (15) hours over two (2) days.

Ultimately, the parties were able to resolve all of their disputes, culminating in the NZ Settlement Agreement. The NZ Settlement Agreement was approved by the Bankruptcy Court at a hearing held on November 4, 2015.

**G.    Bar Date for Filing of Claims Arising Prior to the Petition Date**

On October 1, 2015, the Bankruptcy Court entered an order (the "Bar Date Order") (i) setting a deadline (the "Bar Date") for filing proofs of claim against the Debtor and its Estate pursuant to Federal Rule of Bankruptcy Procedure 3003(c)(3); (ii) approving the form of notice of the Bar Date (the "Bar Date Notice") to be sent to Creditors and parties in interest; and (iii) approving as adequate and sufficient, the service of the Bar Date Notice by first class mail.  The Bar Date Order fixed November 12, 2015, at 5:00 P.M. as the Bar Date by which all Claims against the Debtor which arose prior to June 8, 2015, other than those types of Claims specifically excepted, had to be filed.

The Bar Date Notice was served by first class regular mail upon (a) the U.S.  Trustee and all persons or entities who have requested notice of the proceedings in the Chapter 11 Case at that time; (b) all persons or entities listed in the Schedules as holding Claims; (c) all other nonscheduled holders of Claims known to the Debtor as of the date of the Bar Date Notice.

In accordance with Federal Rule of Bankruptcy Procedure 3003(c)(2), holders of  Claims who failed to comply with the terms of the Bar Date Order are forever barred from (i) filing a proof of claim with respect to such Claim, (ii) asserting such Claims against the Debtor or its Estate and/or property, (iii) voting on any plan filed in this Chapter 11 Case and (iv) participating in any Distribution in the Chapter 11 Case on account of such Claims.

**IV.    SUMMARY OF THE PLAN**

**A.    General Plan Objectives**

Chapter 11 is the chapter of the Bankruptcy Code primarily used for business reorganization.  Under chapter 11, a company endeavors to restructure its finances such that it maximizes recovery to its creditors.

Formulation of a chapter 11 plan is the primary purpose of a chapter 11 case.  A chapter 11 plan sets forth and governs the treatment and rights to be afforded to creditors and shareholders with respect to their claims against and equity interests in the debtor.

**B.      Provisions Governing Order and Method for Distributions Under the Plan**

The Plan divides Claims against and Interests in the Debtor into four (4) categories or "Classes" according to the underlying basis and subsequent treatment for each.  Claims within the same Class are treated identically.

Administrative Expense Claims, Professional Fee Claims, and Priority Tax Claims are not classified but are treated in the manner set forth in Article 2 of the Plan and summarized below.

**C.      Classes of Claims and Interests**

The following classes of Claims and Interests are designated pursuant to and in accordance with section 1123(a)(1) of the Bankruptcy Code, which Classes are mutually exclusive.

| Class | Class Description | Estimated Amount of Allowed Claims in Class | Treatment Under Plan and Estimated Recovery Under Plan |
|---|---|---|---|
| Unclassified | Administrative Claims (other than professional fees and expenses) | $0.00 | Unimpaired. Estimated Recovery: 100% |
| Unclassified | Professional Fee Claims | $425,000 in professional fees and expenses through October 31, 2015, net of retainers. | Unimpaired. Estimated Recovery: 100% |
| Unclassified | Priority Tax Claims | Less $1,000.00 | Unimpaired. Estimated Recovery: 100% |
| Class 1 | Non-Tax Priority Claims | $0.00 | Unimpaired. Estimated Recovery: 100%. Deemed to Accept. |
| Class 2 | NZ Allowed Claim | $8,000,000.00 | Unimpaired. Estimated Recovery: 100%. Deemed to Accept. |

| Class 3 | General Unsecured Claims | $2,000,000 | Unimpaired. Estimated Recovery: 100%. Deemed to Accept. |
| Class 4 | Interests | N/A | Not Impaired. Estimated Recovery: 100%. Deemed to Accept. |

1.      Administrative Claims

All Allowed Administrative Claims, other than Professional Fee Claims, shall be paid in full, in Cash, in such amounts as are incurred in the ordinary course of the Debtor's business, or in such amounts as may be Allowed by the Bankruptcy Court (a) as soon as practicable following the later of the Effective Date or the date upon which the Court enters a Final Order allowing any such Administrative Claim, or (b) upon such other terms as may exist in accordance with the ordinary course of the Debtor's business or (c) as may be agreed upon between the holder of any such Administrative Claim and the Debtor.  In the event there exists any Disputed Administrative Claims on the Effective Date, the Debtor shall at all times hold and maintain Cash in an amount equal to that portion of the Disputed Claims Reserve attributable to all Disputed Administrative Expense Claims.

2.      Professional Fee Claims

The Debtor shall pay all Professional Fee Claims as soon as practicable after a Final Order has awarded such compensation and reimbursement of expenses pursuant to proper application in accordance with Section 5.12 of the Plan.

3.      Priority Tax Claims

Unless otherwise agreed to by the Debtor and a holder of an Allowed Priority Tax Claim, each holder of an Allowed Priority Tax Claim will receive, at the Debtor's option, (i) an amount in Cash equal to the Allowed amount of such Priority Tax Claim as soon as practicable following the later of (a) the Effective Date, and (b) the date on which such Priority Tax Claim becomes an Allowed Claim; or (ii) deferred Cash payments following the Effective Date, over a period ending not later than five (5) years after the Petition Date, in an aggregate amount equal to the Allowed amount of such Priority Tax Claim (with any interest to which the holder of such Priority Tax Claim may be entitled calculated in accordance with section 511 of the Bankruptcy Code) in accordance with section 1129(a)(9)(C) of the Bankruptcy Code; provided, however, that all Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as they become due.

4.      Class 1 (Non-Tax Priority Claims)

On the Effective Date, or as soon thereafter as is reasonably practicable, in full satisfaction of such Allowed Non-Tax Priority Claim, each holder of an Allowed Non-Tax

Priority Claim shall receive (a) an amount in Cash equal to the Allowed amount of such Non-Tax Priority Claim, or (b) such other treatment as to which the Debtor and the holder of such Allowed Non-Tax Priority Claim shall have agreed upon in writing.  In the event any Disputed Non-Tax Priority Claims exist on the Effective Date, the Debtor shall hold and maintain Cash in an amount equal to that portion of the Disputed Claims Reserve attributable to all Disputed Non-Tax Priority Claims until such dispute is resolved consensually or by order of the Bankruptcy Court.

     5.     <u>Class 2 (NZ Allowed Claim)</u>

On the Effective Date, in accordance with and pursuant to the terms of the NZ Settlement Agreement, NZ shall receive payment in full of the NZ Allowed Claim in full release, satisfaction and discharge of the NZ Allowed Claim.

On the Effective Date, upon full payment of the NZ Allowed Claim, NZ, on behalf of herself, her heirs, successors, and assigns, hereby releases and discharges all of the parties listed on Exhibit B of the NZ Settlement Agreement and each of their respective officers, directors, shareholders, employees, attorneys, agents, accountants and other professionals (acting in such capacities) (the "<u>Nahal Released Parties</u>") from any and all actions and causes of action, suits, debts, obligations, covenants, rights, claims, counterclaims, accounts, reckonings, bonds, bills, specialties, contracts, controversies, agreements, promises, variances, trespasses, damages, debts, sums of money, judgments, extents, executions, demands, and liabilities of any type or nature whatsoever, whether known or unknown, suspected or unsuspected, asserted or unasserted, direct or indirect, vested, fixed, contingent or conditional, whether in contract or tort, at law or in equity, that she now has, ever had or can, may or shall have for, upon, or by reason of any matter, cause or thing whatsoever, against any or all of the Nahal Released Parties from the beginning of the world to the Effective Date, with the exception of obligations under the NZ Settlement Agreement, including the tax indemnification provisions of paragraph 9 NZ Settlement Agreement, which shall continue.

On the Effective Date, and in consideration of the terms and provisions of the NZ Settlement Agreement and other good and valuable consideration, the Debtor and the Nahal Released Parties shall release and discharge Nahal, her heirs, executors, administrators, successors and assigns and each of their respective attorneys, agents, accountants and other professionals (acting in such capacities)  (the "<u>Debtor Released Parties</u>") in the form attached as Exhibit C of the NZ Settlement Agreement, from any and all actions and causes of action, suits, debts, obligations, covenants, rights, claims, counterclaims, accounts, reckonings, bonds, bills, specialties, contracts, controversies, agreements, promises, variances, trespasses, damages, debts, sums of money, judgments, extents, executions, demands, and liabilities of any type or nature whatsoever, whether known or unknown, suspected or unsuspected, asserted or unasserted, direct or indirect, vested, fixed, contingent or conditional, whether in contract or tort, at law or in equity, that any of them now has, ever had or can, may or shall have for, upon, or by reason of any matter, cause or thing whatsoever, against any or all of the Debtor Released Parties from the beginning of the world to the Effective Date.

The NZ Settlement Agreement and each term thereof is incorporated into the Plan by reference, and all of the terms and conditions therein shall apply to the Plan. The inclusion or

non-inclusion of any term of the NZ Settlement Agreement in the Plan shall have no effect on the enforceability thereof.

      6.      Class 3 (General Unsecured Claims)

On the Effective Date, or as soon thereafter as is reasonably practicable, in full satisfaction of such Allowed General Unsecured Claim, each holder of an Allowed General Unsecured Claim shall receive one or more Distributions totaling 100% of the amount of such Allowed General Unsecured Claim, plus post-Petition Date interest pursuant to any applicable contract rate or, if there is no applicable contract rate, the applicable federal rate.

      7.      Class 4 (Interests)

Holders of Interests shall retain their interests in the Reorganized Debtor.

## V.    MEANS OF IMPLEMENTING THE PLAN

### A.    Simultaneous Transactions.

Except as otherwise expressly set forth in the Plan, the Confirmation Order or a written agreement by the Debtor or Reorganized Debtor, each action to be taken on the Effective Date shall be deemed to occur simultaneously as part of a single transaction, including, without limitation, the Distributions under the Plan, the implementation of the NZ Settlement Agreement, and the obligations of the Debtor and NZ thereunder.

### B.    Vesting of Assets in Reorganized Debtor.

Except as otherwise provided in the Plan or in the Confirmation Order, as of the Effective Date, all property of the Debtor's Estate (including Causes of Action) shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances or interests. On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may operate its business and may use, acquire and dispose of property and compromise or settle any Claims or Causes of Action without supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

### C.    Preservation of Causes of Action.

Except as otherwise provided in the Plan, each Cause of Action of the Debtor shall be preserved and, along with the exclusive right to enforce such Cause of Action, shall vest in the Reorganized Debtor on the Effective Date; provided that nothing in the Plan shall limit the ability under the Bankruptcy Code of any party-in-interest to object to any Claim prior to the Claim Objection Bar Date unless otherwise ordered by the Bankruptcy Court. Unless a Cause of Action is expressly waived, relinquished, released or compromised in the Plan or an order of the Bankruptcy Court, the Reorganized Debtor expressly reserves all such Causes of Action for later adjudication and, accordingly, no doctrine of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), laches or other preclusion doctrine shall apply to any such Cause of Action as a consequence of the Confirmation, the Plan, the vesting of such Causes of Action in the Reorganized Debtor, any order of the Bankruptcy Court or any act in the Chapter 11 Case. No Person may rely on the absence of a specific reference in

the Plan or the Disclosure Statement to any Cause of Action against them as an indication that the Debtor or the Reorganized Debtor, as applicable, will not pursue such Cause of Action.

### D.      Insurance Preservation.

Nothing in the Plan shall diminish or impair the enforceability of any insurance policies that may cover Claims against the Debtor, the Reorganized Debtor, or their respective employees, officers, directors, shareholders or any other Person.

### E.      Execution of Documents to Effectuate Plan.

From and after the Confirmation Date, the Debtor and the Reorganized Debtor, as applicable, shall have the exclusive power and authority to execute any instrument or document to effectuate the provisions of the Plan. The Confirmation Order shall constitute authorization of the Debtor and Reorganized Debtor, as applicable, to take, or cause to be taken, all actions necessary or appropriate to consummate and implement the provisions of the Plan.

### F.      Section 1146 Exemption from Certain Transfer Taxes and Recording Fees.

Pursuant to, and to the fullest extent permitted by, section 1146(a) of the Bankruptcy Code, any transfers from the Debtor to the Reorganized Debtor or to any other Person, pursuant to, in contemplation of, or in connection with the Plan (including any transfer pursuant to: (a) the creation, modification, consolidation, assumption, termination, refinancing and/or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (b) the grant of collateral as security for Exit Financing; or (c) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan) shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, sales and use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local government officials or agents shall, and shall be directed to, forgo the collection of any such tax, recordation fee or government assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee or government assessment.

### G.      Exit Financing.

On the Effective Date, the Reorganized Debtor shall execute the Exit Financing Documents and obtain the Exit Financing from MFC.

The Debtor and Reorganized Debtor, as applicable, shall be authorized to enter into and perform and execute and deliver the Exit Financing Documents. The Debtor and Reorganized Debtor, as applicable, is hereby authorized to borrow under such Exit Financing and use the proceeds of such borrowings for any purpose permitted thereunder, including to fund (a) Distributions under and in accordance with the Plan, and (b) ongoing business operations, general corporate purposes and working capital needs.

Confirmation of the Plan shall be deemed (a) approval of the Exit Financing and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtor in connection therewith, and (b) authorization for the Debtor and Reorganized Debtor, as applicable, to enter into and perform under the Exit Financing Documents. The Exit Financing Documents shall constitute legal, valid, binding and authorized obligations of the Reorganized Debtor, enforceable in accordance with their terms. The financial accommodations to be extended pursuant to the Exit Financing Documents shall be deemed to have been extended in good faith, for legitimate business purposes, and not be subject to avoidance, recharacterization or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law.

On the Effective Date, all of the liens and security interests to be granted in accordance with the Exit Financing Documents (a) shall be deemed to be approved; (b) shall be legal, binding and enforceable liens on, and security interests in, the collateral granted under the Exit Financing Documents in accordance with the terms of the Exit Financing Documents; (c) shall be deemed perfected on the Effective Date, subject only to such liens and security interests as may be permitted under the Exit Financing Documents, and the priorities of such liens and security interests shall be as set forth in the respective Exit Financing Documents; and (d) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law. The Debtor, the Reorganized Debtor and MFC are authorized to make all filings and recordings to establish and perfect such liens and security interests under the provisions of the law that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection of the liens and security interests granted under the Exit Financing Documents shall occur automatically by virtue of the entry of the Confirmation Order and funding on or after the Effective Date, and any such filings, recordings, approvals and consents shall not be necessary or required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such liens and security interests to third parties.

## H.   **Escrow Release.**

On the Effective Date, funds being held in escrow by the Debtor's counsel shall be released and directed as the Debtor requests in writing (subject to the requirements of the NZ Settlement Agreement).

## I.   **Plan Distributions.**

As set forth in greater detail in Article 4 of the Plan, on the Effective Date, the Debtor will make Distributions to holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Professional Fee Claims, Allowed Non-Tax Priority Claims, and to NZ on account of the NZ Allowed Claim.

14

At its option, the Debtor may make (i) deferred cash payments to holders of Priority Tax Claims at least quarterly as provided in section 2.3 of the Plan; and (ii) one or more Distributions to holders of Class 3 General Unsecured Claims as provided in section 4.3 of the Plan.

The funding of the Distributions under the Plan shall be made from a combination of (a) Cash on hand as of the Effective Date; (b) the Exit Financing; (c) the funds currently in escrow; and (d) revenues generated by the Debtor on and after the Effective Date. The Debtor believes that these sources are sufficient to implement the Plan and make all Distributions thereunder.

## J.   **Post-Confirmation Date Governance and Management.**

(a)      The certificate and/or articles of incorporation and the by-laws of the Debtor in effect as of the day preceding the Effective Date (the "Organizational Documents") shall remain in full force and effect on and after the Effective Date, except that the Organizational Documents shall be deemed to prohibit, without further notice or filing, the issuance of any non-voting equity securities or any preferred stock until such time as the Plan has been fully consummated.

(b)      On and after the Effective Date, the Reorganized Debtor shall exist and shall be operated under and in accordance with the Organizational Documents, and under the same name as the Debtor, and its authorized capital stock shall be the same as set forth in the Organizational Documents, without the need for the filing of any new or further documents with the Secretary of State of the State of New York or any another governmental agency.

(c)      On and after the Effective Date, the management, control and operation of the Reorganized Debtor will be the responsibility of the Board of Directors and the officers of the Reorganized Debtor.  On the Effective Date, the Debtor's current officers shall continue in their respective pre-Confirmation Date corporate roles and positions in the Reorganized Debtor. Specifically, Danny Zelouf shall continue as President of the Reorganized Debtor and Rony Zelouf shall continue as Secretary of the Reorganized Debtor. The compensation paid to the Reorganized Debtor's officers shall be consistent with their pre-Confirmation Date compensation by the Debtor; provided, however, that nothing herein shall constitute a prohibition of any change, increase or decrease in compensation after the Effective Date, which shall be determined by the officers of the Reorganized Debtor in accordance with the Organizational Documents. Danny Zelouf and Rony Zelouf shall also continue in their roles and positions as the sole members of the Reorganized Debtor's Board of Directors.

(d)      Except as provided for in the Plan, no director, officer, manager or employee of the Debtor who continues to serve or be employed by the Reorganized Debtor in any position or capacity after the Effective Date shall be liable to any Person for any Claim that arose prior to the Effective Date in connection with his or her service as a director, officer, manager or employee of the Debtor.

(e)      On the Effective Date, the Organizational Documents of the Reorganized Debtor shall provide or shall be deemed to provide, subject thereafter to the rights of the board of directors and the shareholders of the Reorganized Debtor, to make such changes as they deem appropriate consistent with applicable law, for indemnification of the directors and officers of the Reorganized Debtor with respect to their post-Effective Date conduct to the fullest extent permitted by applicable law of the State of New York.

15

(f)     On the Effective Date, the sponsorship of any employee benefit plan or any employee welfare benefit plan sponsored by the Debtor, if any (the "Employee Plans") shall be assumed and maintained by the Reorganized Debtor.  The Board of Directors of the Reorganized Debtor will, on or as soon as administratively practicable following the Effective Date, adopt resolutions providing for such assumption as of the Effective Date, authorizing the appropriate officers of the Reorganized Debtor to take any and all actions and to execute any and all documents deemed necessary to implement and effectuate the assumption and maintenance of the Employee Plans, including any required amendments to any plan documents or agreements pursuant to which any such plan was created, sponsored or adopted.  Notwithstanding the foregoing, after the Effective Date, the Reorganized Debtor may terminate or modify any Employee Plan at any time in accordance with the terms of such plan and applicable law.

(g)     The obligations of the Debtor to indemnify any Person serving at any time on or prior to the Effective Date as one of its directors, officers or employees, by reason of such Person's service in such capacity, to the extent provided in the Debtor's Organizational Documents or by a written agreement with the Debtor, or pursuant to applicable general corporation law, each as applicable, shall be deemed and treated as executory contracts that are assumed by the Debtor and the Reorganized Debtor pursuant to the Plan and Section 365 of the Bankruptcy Code as of the Effective Date.  Accordingly, such indemnification obligations shall be treated as Allowed Administrative Expense Claims and shall survive unimpaired and unaffected by entry of the Confirmation Order, irrespective of whether such indemnification is owed for any act or event occurring before or after the Petition Date.

(h)     The Reorganized Debtor may reimburse the directors and officers of the Debtor or Reorganized Debtor for any costs or expenses incurred as a result of or in connection with the Chapter 11 Case, including, without limitation, any advances made by the Debtor's or Reorganized Debtor's officers to fund the Plan.

**K.      Post-Confirmation Reports and Fees.**

Following the Effective Date and until the Chapter 11 Case is closed, not less than once every ninety (90) days, the Debtor or Reorganized Debtor, as applicable, shall be responsible for the filing of all post-Effective Date reports required during such periods with the U.S. Trustee and payment of all post-Effective Date fees charged or assessed against the Estate under 28 U.S.C. §1930 during such periods together with applicable interest pursuant to 31 U.S.C. § 3717.

**L.      Deadline for Filing Applications for Professional Fee Claims.**

All parties seeking payment of Professional Fee Claims arising through and including the Confirmation Date must file with the Bankruptcy Court and serve upon the Debtor a final application for payment of reasonable fees and expenses under section 330 of the Bankruptcy Code on or before the first Business Day after the thirtieth (30th) day after the Effective Date (the "Fee Application Deadline").

**M.      Post-Confirmation Date Fees and Expenses.**

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtor or the Reorganized Debtor, as applicable, shall, in the ordinary course of

business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional or other fees and expenses related to implementation and Consummation of the Plan incurred by the Debtor or the Reorganized Debtor, as applicable. Except as otherwise specifically provided in the Plan, upon the Confirmation Date, any requirement that Professionals comply with sections 327, 328, 329, 330, or 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtor and the Reorganized Debtor may employ and pay any Professional in the ordinary course of business.

### N.    Administrative Claim Bar Date.

Persons asserting an Administrative Claim (other than Professional Fee Claims) must file a request for payment of such Administrative Claim on or before 5:00 p.m. prevailing Eastern Time on the date that is 30 days after the mailing of notice of the Effective Date. No payment or Distributions will be made on account of any Administrative Claim until such Claim becomes an Allowed Claim. Any person asserting an Administrative Claim that fails to file and serve an Administrative Claim on or before the Administrative Claims Bar Date shall be forever barred from asserting any such right to payment as against the Debtor, the Estate and the Reorganized Debtor.

### O.    Disallowance of Claims without Further Order of the Court.

As of the Confirmation Date, any Scheduled Claim designated as disputed, contingent or unliquidated in amount, and for which a proof of Claim has not been filed by the Creditor, shall be deemed disallowed and expunged. All Scheduled Claims that correspond to a proof of Claim filed by a particular Creditor shall be deemed to have been superseded by such later filed proof of Claim and the Scheduled Claims, regardless of priority, and shall be expunged from the claims register; provided however, that such proofs of Claim shall be subject to objection in accordance with Section 9.6 of the Plan.  A Claim of a Creditor allowed by Final Order of the Bankruptcy Court shall be deemed to supercede a filed proof of Claim and Scheduled Claims with respect to such Creditor.

## VI.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.    General Provisions.

All Executory Contracts and unexpired leases of the Debtor shall be deemed assumed as of the Effective Date, unless a particular executory contract or unexpired lease (i) has previously been assumed or rejected pursuant to order of the Bankruptcy Court or applicable provisions of the Bankruptcy Code, or (ii) has expired or otherwise terminated pursuant to its terms.

### B.    Cure of Defaults.

Any payment required to cure a default under an assumed Executory Contract or Unexpired Lease shall be paid in Cash promptly after the Effective Date or, if there is a dispute

regarding the assumption or cure of such Executory Contract or Unexpired Lease, the entry of a
Final Order or orders resolving such dispute.

### C.      Effect of Assumption.

Assumption of any Executory Contract or Unexpired Lease, pursuant to the Plan or
otherwise, shall result in the full release and satisfaction of any Claims or defaults, whether
monetary or nonmonetary, and the deemed waiver of any termination right or remedial provision
arising under any such Executory Contract or Unexpired Lease at any time prior to the effective
date of its assumption, or as a result of such assumption, the transactions contemplated by the
Plan. Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that
has been assumed shall be deemed disallowed and expunged without further notice to, or action,
order or approval of, the Bankruptcy Court, except in the event that the applicable Debtor and the
counterparty to an Executory Contract or Unexpired Lease have separately agreed to a waiver or
reduction of obligations that would otherwise constitute cure obligations, subject to the
counterparties' explicit retention of their rights to assert any such amounts as Unsecured Claims.

Each Executory Contract and Unexpired Lease assumed pursuant to Article 6 of the Plan
or any order of the Bankruptcy Court shall vest in, and be fully enforceable by, the Reorganized
Debtor in accordance with its terms, except as such terms are modified by the provisions of the
Plan or any order of the Bankruptcy Court.

## VII.   CONDITIONS PRECEDENT

### A.      Conditions to Confirmation

The following conditions must be satisfied, or otherwise waived by the Debtor in
accordance with Section 7.3 of the Plan, on or before the Confirmation Date:

(a) The Exit Financing and/or the Funding Requirement (as defined in the NZ Settlement
Agreement) shall have been satisfied.

(b) The entry of the Confirmation Order shall be in form and substance reasonably
satisfactory to the Debtor and shall contain provisions that, among other things: (i) authorize the
implementation of the Plan in accordance with its terms; (ii) approve in all respects the other
settlements, transactions, and agreements to be effected pursuant to the Plan; and (iii) find that
the Plan complies with all applicable provisions of the Bankruptcy Code, including that the Plan
was proposed in good faith and that the Confirmation Order was not procured by fraud.

### B.      Conditions to Effective Date

The Effective Date shall not occur and no obligations under the Plan shall come into
existence, unless each of the following conditions is met or, alternatively, is waived in
accordance with Section 7.3 of the Plan, on or before the Effective Date:

(a) The Confirmation Order shall have been entered and no stay of its effectiveness of the
same shall have been issued within fourteen (14) days following the entry of the Confirmation
Order; and

(b) The Debtor shall have sufficient Cash on hand to pay all Administrative Expense Claims, Professional Fee Claims and the NZ Allowed Claim.

### C.       Waiver of Conditions

Each of the conditions precedent in Sections 7.1 and 7.2 of the Plan may be waived or modified by the Debtor without further Court approval, in whole or in part.

## VIII.   DISCHARGE; INJUNCTIONS; EXCULPATIONS

### A.       Discharge

**Pursuant to section 1141(d) of the Bankruptcy Code and to the fullest extent permitted by law, the treatment of Claims and Interests under the Plan shall be in full and final satisfaction, settlement, release, and discharge, as of the Effective Date, of all Claims and Interests of any nature whatsoever, whether known or unknown, against the Debtor, any property of the Estate, the Reorganized Debtor or any property of the Reorganized Debtor, including all Claims of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim based upon such Claim, debt, or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim based upon such Claim, liability, or obligation is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim, Interest liability, or obligation has accepted the Plan.**

### B.       Injunction

#### 1.       Injunctions Against Interference with Consummation or Implementation of Plan.

**All holders of Claims or Interests shall be enjoined from commencing or continuing any judicial or administrative proceeding or employing any process against the Debtor, the Estate or the Reorganized Debtor with the intent or effect of interfering with the consummation and implementation of this Plan and the transfers, payments and Distributions to be made hereunder.**

#### 2.       Plan Injunction.

**Except as otherwise expressly provided for in the Plan, from and after the Effective Date, all Persons are permanently enjoined from commencing or continuing in any manner against the Debtor, the Reorganized Debtor, their successors and assigns, and their respective assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any Claim, demand, liability, obligation, debt, right, Cause of Action, interest or remedy discharged or exculpated pursuant to the Plan or the Confirmation Order.**

**Except as otherwise expressly provided for in the Plan, from and after the Effective Date, all Persons shall be precluded from asserting against the Debtor, the Reorganized Debtor, their successors and assigns and their respective assets and properties, any other**

Claims based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

Except as otherwise expressly provided for in the Plan, the rights afforded in the Plan and the treatment of all Claims in the Plan shall be in exchange for and in complete satisfaction of Claims of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, against the Debtor or Reorganized Debtor or any of their respective assets or properties.  On the Effective Date, all such Claims against the Debtor shall be discharged, satisfied and released in full.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THE PLAN, ALL PERSONS ARE PERMANENTLY ENJOINED, ON AND AFTER THE EFFECTIVE DATE, ON ACCOUNT OF ANY CLAIM AGAINST THE DEBTOR THAT IS SATISFIED AND DISCHARGED HEREBY, FROM:

(A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTOR, THE REORGANIZED DEBTOR, THEIR RESPECTIVE SUCCESSORS AND ASSIGNS AND THEIR RESPECTIVE ASSETS AND PROPERTIES;

(B) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST THE DEBTOR, THE REORGANIZED DEBTOR, THEIR RESPECTIVE SUCCESSORS AND ASSIGNS AND THEIR RESPECTIVE ASSETS AND PROPERTIES;

(C) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST THE DEBTOR, THE REORGANIZED DEBTOR, PROPERTY OR ESTATE OR PROPERTY OF REORGANIZED DEBTOR;

(D) ASSERTING ANY RIGHT OF SETOFF OR SUBROGATION OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DEBTOR OR AGAINST THE PROPERTY OR ESTATE OF THE DEBTOR OR REORGANIZED DEBTOR, EXCEPT TO THE EXTENT A RIGHT TO SETOFF OR SUBROGATION IS ASSERTED WITH RESPECT TO A TIMELY FILED PROOF OF CLAIM; OR

(E) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND IN RESPECT OF ANY CLAIM AGAINST THE DEBTOR OR CAUSE OF ACTION THAT IS DISCHARGED HEREBY.

C.      No Bar to Claims Against Third Parties.

Holders of Claims or Interests against the Debtor are not barred or otherwise enjoined by the Plan from pursuing any recovery against Persons that are not the Debtor, except as provided in the NZ Settlement Agreement.

20

### D.      Exculpation.

**To the fullest extent permitted by section 1125(e) of the Bankruptcy Code, the Debtor and the Reorganized Debtor, and each of their respective shareholders, officers, directors, employees and Professionals (including individuals within such firms) (each, an "Exculpated Party") shall neither have nor incur any liability to any Person for any act taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, administration, confirmation or consummation of the Plan, the Disclosure Statement, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, or any act taken or omitted to be taken during the Chapter 11 Case, except for (i) acts or omissions as a result of willful misconduct or gross negligence and (ii) liability of any released person for any debt owed to the United States Government, any state, city or municipality arising under (a) the Internal Revenue Code or any state, city or municipal tax code, (b) the environmental laws of the United States or any state, city or municipality or (c) laws regarding the regulation of securities administered by the SEC and (d) any criminal laws of the United States, any state, city or municipality.   From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute, and may be submitted as, a complete defense to any claim or liability released pursuant to the Plan.**

No Exculpated Party shall be exculpated from any liability resulting from any act or omission that is determined by Final Order to have constituted fraud, willful misconduct, gross negligence, criminal conduct, or limits the liability of any Person pursuant to N.Y. Comp. Codes R. & Regs. Tit. 22 § 1200.8 Rule 1.8(h)(1) (2009) and any other statutes, rules or regulations dealing with professional conduct to which such professionals are subject; provided that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement.

### E.      Release of Liens, Claims and Encumbrances.

Except as otherwise provided in the Plan or in any contract, instrument, or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all judgments, mortgages, Liens, pledges security interests and other encumbrances on any property of the Estates shall be fully discharged.

### F.      No Release of Plan Obligations.

Nothing herein shall constitute a release any post-Effective Date obligations of Person under the Plan or any document, instrument or agreement executed to implement the Plan, including, without limitation, the obligations under the NZ Settlement Agreement.

### G.      No Modification of Res Judicata Effect.

The provisions of this Article 8 are not intended, and shall not be construed, to modify the *res judicata* effect of any order entered in the Chapter 11 Case, including, without limitation,

the Confirmation Order and any order finally determining Professional Fee Claims to any Professional.

## IX.    PROCEDURES FOR DISTRIBUTIONS UNDER PLAN

Article 5 of the Plan establishes the procedures and guidelines for Distributions to be made to the terms of the Plan to the holders of Claims, including the timing, procedures and notice provisions related to same.  Distributions shall be made by the Debtor as follows.

### A.    Payment in U.S. Dollars.

All Cash payments required under the Plan shall be made in U.S. dollars by checks drawn on a domestic bank selected by the Debtor in accordance with the Plan or by wire transfer from a domestic bank, at the Debtor's option.

### B.    Distributions Only on Business Days.

If any Distribution called for under the Plan is due on a day other than a Business Day, such Distribution shall instead be made the next Business Day.

### C.    Transmittal of Payments and Notices.

All Distributions shall be made to the Holder of a Claim by regular first-class mail, postage prepaid, in an envelope addressed to such holder at the address listed on its Proof of Claim filed with the Bankruptcy Court or, if no Proof of Claim was filed, (i) at the address listed on the Debtor's Schedules, or (ii) at such address that a Holder of a Claim provides to the Debtor after the Effective Date in writing and files at least fifteen (15) business days prior to a Distribution Date.   The Debtor shall have no duty to ascertain the mailing address of any Holder of a Claim other than as set forth herein. The date of payment or delivery shall be deemed to be the date of mailing.  Payments made in accordance with the provisions of this Section shall be deemed made to the Holder regardless of whether such Holder actually receives the payment.

### D.    Record Date for Distributions.

Except as otherwise provided in a Final Order of the Bankruptcy Court, a transferee of a Claim that is transferred pursuant to Bankruptcy Rule 3001 with appropriate filings ("Claim Transfer Document") made on or before the Record Date shall be treated as the Holder of the Claim for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer(s) may not have expired prior to the Record Date.  The Debtor shall have no obligation to recognize any transfer of any Claim occurring after the Record Date.   In making a Distribution with respect to any Claim, the Debtor shall be entitled to recognize and deal for all purposes hereunder only with the Person who is listed on the Proof of Claim filed with respect to such Claim, on the Debtor's Schedules as the Holder thereof, and upon such other evidence or record of transfer or assignment filed as of the Record Date.

### E.   Unclaimed Distributions.

Any Unclaimed Distribution (including a Distribution made by check that is not cashed or otherwise negotiated within ninety (90) days after the Distribution Date shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code.

Any such Unclaimed Distribution shall revest in the Reorganized Debtor pursuant to section 347(b) of the Bankruptcy Code. Upon such revesting, the Claim of any Holder or its successors and assigns with respect to such property shall be cancelled, discharged and forever barred notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary.

### F.   Claims Administration.

(1) Objections to Claims. The Debtor or Reorganized Debtor may dispute, object to, compromise or otherwise resolve all Claims. Unless otherwise provided in the Plan or ordered by the Bankruptcy Court, any objections to Claims (other than Administrative Claims) shall be filed on or before the Claims Objection Bar Date.

(2) Reservation of Rights. Unless a Claim is specifically Allowed prior to or after the Effective Date, the Debtor reserves any and all objections to any and all Claims and motions or requests for the payment of Claims, whether administrative, secured or unsecured, including without limitation any and all objections to the validity or amount of any and all alleged Administrative Expense Claims, Priority Tax Claims, or Non-Tax Priority Claims, liens and security interests, whether under the Bankruptcy Code, other applicable law or contract. The failure to object to any Claim prior to the Effective Date shall be without prejudice to the Debtor's and Reorganized Debtor's right to contest or otherwise defend against such Claim in the Bankruptcy Court when and if such Claim is sought to be enforced by the holder of the Claim.

(3) Filing Objections. An objection to a Claim shall be deemed properly served on the claimant if the Debtor or Reorganized Debtor effects service of any such objection in accordance with Rule 3007 of the Bankruptcy Rules by mailing or otherwise delivering the objection and a notice of hearing thereon to the claimant at the address set forth on such claimant's Proof of Claim at least thirty (30) days prior to the hearing thereon.

(4) Determination of Claims. Except as otherwise agreed by the Debtor or Reorganized Debtor, any Claim as to which a Proof of Claim or motion or request for payment was timely filed in the Chapter 11 Case may be determined and liquidated after the Effective Date pursuant to (i) an order of the Bankruptcy Court (which order has not been stayed, reversed or amended and as to which determination or any revision, modification or amendment thereof, and the time to appeal or seek review or rehearing thereof, has expired, and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending), or (ii) applicable non-bankruptcy law. Any Claim determined to be an Allowed Claim after the Effective Date pursuant to this section shall be treated as an Allowed Claim in accordance with the Plan.

23

(5) <u>No Distribution Pending Allowance</u>. If an objection to a Claim or a portion thereof is filed as set forth in Article 9 of the Plan or the Claim otherwise remains a Disputed Claim, except as otherwise provided in a Final Order of the Bankruptcy Court, no payment or Distribution provided under the Plan shall be made on account of such Claim or portion thereof, as applicable, unless and until such Disputed Claim becomes an Allowed Claim.

## G.    Disputed Claims.

(1) Except to the extent the Court determines that a lesser amount is adequate, the Debtor shall, on each Distribution Date, deposit in the Disputed Claims Reserve established by the Debtor Cash equal to the Distributions that would have been made to holders of Disputed Claims if such Claims were Allowed Claims in their full amounts or such lower amount as to which the holder of such Claim has agreed in writing or, in the case where any such Claim is unliquidated and/or contingent, the greater of (i) $1, and (ii) such other amount as is reserved by order of the Bankruptcy Court made upon motion of the Holder of a Disputed Claim.

(2) For purposes of effectuating the provisions of section 9.7 of the Plan, the Court, on or prior to the Effective Date, or thereafter upon the request of any holder of a Claim or the Debtor may liquidate the amount of Disputed Claims pursuant to section 502(c) of the Bankruptcy Code, in which event the amounts so fixed or liquidated shall be deemed to be the aggregate amounts of the Disputed Claims pursuant to section 502(c) of the Bankruptcy Code for purposes of Distribution under this Plan and for purposes of the Disputed Claims Reserve.

(3) When a Disputed Claim becomes an Allowed Claim, there shall be distributed to the holder of such Allowed Claim, in accordance with the provisions of the Plan (but in no event later than the next succeeding Distribution Date), Cash in the amount of all Distributions to which such holder would have been entitled if such holder's Claim were Allowed on the Effective Date.

(4) To the extent that a Disputed Claim ultimately becomes an Allowed Claim and is entitled to a Distribution in an amount less than the amount reserved for such Disputed Claim, any excess shall revest in the Reorganized Debtor.

(5) The Disputed Claims Reserve shall be treated as a disputed ownership fund, within the meaning of Treasury Regulation section 1.468B-9, for all purposes associated with taxation.

(6) Except as expressly set forth in the Plan, or otherwise agreed to in writing or ordered by the Court, the Debtor shall not have any duty to fund the Disputed Claims Reserve.

(7) The Debtor shall pay, or cause to be paid, out of the funds held in the Disputed Claims Reserve, any tax imposed by any federal, state, or local taxing authority on the income generated by the funds or property held in the Disputed Claims Reserve.   The Debtor shall file, or cause to be filed, any tax or information return related to the Disputed Claims Reserve that is required by any federal, state, or local taxing authority.

## H.    Claims by Persons From Which Property Is Recoverable.

Unless otherwise agreed to by the Reorganized Debtor or ordered by the Bankruptcy Court, any Claims held by any Person or Entity from which property is recoverable under

24

sections 542, 543, 550 or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and any Holder of such Claim may not receive any Distributions on account of such Claim until such time as such Cause of Action against that Person has been resolved.

**I.       Timing of Distributions on Disputed Claims Subsequently Allowed.**

In the event that a Disputed Claim is Allowed, in whole or in part, after the Effective Date, a Distribution shall be made on account of such Allowed Claim on the next Business Day that is fifteen (15) business days after such Claim is Allowed.

**J.       Disputed Distribution.**

If a dispute arises as to the identity of the Holder of an Allowed Claim who is to receive a Distribution, the Debtor may, in lieu of making such Distribution to any Holder, hold such amount until the dispute is resolved by Final Order of the Bankruptcy Court or by written agreement among the parties to such dispute.

**K.       Claims Filed After the Applicable Bar Date.**

Except as otherwise specifically provided herein or in a Final Order of the Bankruptcy Court, any and all Proofs of Claim filed after the applicable Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order or approval of the Bankruptcy Court, and any and all Holders of such Claims shall not receive any Distributions on account of such Claims, unless such late-filed Proof of Claim has been deemed timely filed by a Final Order of the Bankruptcy Court.

**L.       Amendment to Proofs of Claim.**

On or after the Effective Date, a Proof of Claim may not be amended (other than solely to update or correct the name or address of the Holder of such Claim) without the prior authorization of the Bankruptcy Court or the Reorganized Debtor, and any such amended Proof of Claim filed without such prior authorization shall be deemed disallowed in full and expunged without any further notice to or action, order or approval of the Bankruptcy Court.

**M.       Setoff and Recoupment.**

Except as otherwise provided in the Plan, the Debtor or Reorganized Debtor may, but shall not be required to, set off against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any Claims, defenses or Causes of Action of any nature whatsoever that the Debtor or Reorganized Debtor may have, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor or Reorganized Debtor of any right of setoff or recoupment against the holder of any Claim.

**N.      Compliance with Tax Withholding and Reporting Requirements.**

With respect to all Distributions made under the Plan, the Debtor and Reorganized Debtor will comply with all withholding and reporting requirements of any federal, state, local or foreign taxing authority.

**O.      No Postpetition Interest on Claims.**

Unless otherwise specifically provided for in the Plan or the Confirmation Order, required by applicable law, or agreed to by the Debtor or the Reorganized Debtor, as applicable, postpetition interest shall not accrue or be paid on any Claim, and no Holder of a Claim against the Debtor shall be entitled to interest accruing on, or after the Petition Date, on any such Claim. Further, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date an initial or final Distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

## X.      PLAN INTERPRETATION AND CONFIRMATION

**A.      Procedures Regarding Objections to Designation of Classes as Impaired or Unimpaired.**

In the event the designation of the treatment of a Class as impaired or unimpaired is objected to, the Bankruptcy Court shall determine the objection and voting shall be permitted or disregarded in accordance with the determination of the Bankruptcy Court.

**B.      Withdrawal and Modification of Plan.**

This Plan may be withdrawn by the Debtor at any time prior to the Confirmation Date. The Debtor or Reorganized Debtor may modify the Plan in any manner consistent with section 1127 of the Bankruptcy Code prior to Consummation thereof.  Upon request by the Debtor or Reorganized Debtor, the Plan may be modified after Consummation with the approval of the Bankruptcy Court, provided that such modification does not affect the essential economic treatment of any Person that objects in writing to such modification.

**C.      Governing Law.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or the Plan, the laws of the State of New York applicable to contracts executed in such State by residents thereof and to be performed entirely within such State shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with this Plan.

**D.      Presumed Acceptance of Plan.**

Classes 1, 2, 3 and 4 are unimpaired under the Plan. As a result, pursuant to section 1126(f) of the Bankruptcy Code holders of claims in Classes 1, 2, 3 and 4 are conclusively

presumed to have accepted the Plan and the Debtor will not solicit acceptances of the Plan with respect to such classes.

## XI.    RETENTION OF JURISDICTION BY BANKRUPTCY COURT

From the Confirmation Date until entry of a final decree closing the Debtor's Chapter 11 Case, the Bankruptcy Court shall retain such jurisdiction to the maximum extent legally permissible over the Chapter 11 Case for the following purposes:

(a) to hear and determine any and all objections to the allowance of any Claim or Administrative Claim, or any controversy as to the classification of Claims or any matters which may directly, indirectly or contingently affect the obligations of the Debtor to any Creditors, holders of Claims, or other parties in interest;

(b) to hear and determine any and all applications for compensation and reimbursement of expenses by Professionals;

(c) to hear and determine any and all pending motions for the assumption or rejection of executory contracts and unexpired leases, and to fix any Claims resulting therefrom;

(d) to adjudicate through final judgment such contested matters and adversary proceedings as may be pending or subsequently initiated in the Court;

(e) to enforce and interpret the provisions of this Plan and the Confirmation Order;

(f) to issue any injunction or other relief appropriate to implement the intent of the Plan, and to enter such further orders enforcing any injunctions or other relief issued under the Plan or pursuant to the Confirmation Order;

(g) to modify the Plan pursuant to section 1127 of the Bankruptcy Code and the applicable Bankruptcy Rules;

(h) to correct any defect, cure any omission, or reconcile any inconsistency in this Plan or in the Confirmation Order as may be necessary to carry out the purposes and the intent of this Plan;

(i) to interpret and determine such other matters as the Confirmation Order may provide for, or as may be authorized under the Bankruptcy Code;

(j) to enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, reversed, revoked, modified or vacated;

(k) to hear and determine any dispute regarding the existence, nature or scope of the Debtor's discharge;

(l) to enforce all orders previously entered in the Chapter 11 Case by the Bankruptcy Court; and

(m) to hear any other matter not inconsistent with the Bankruptcy Code.

27

## XII.   CERTAIN TAX CONSEQUENCES OF THE PLAN

### A.   General

PURSUANT TO INTERNAL REVENUE SERVICE CIRCULAR 230, THE DESCRIPTION SET FORTH HEREIN WITH RESPECT TO FEDERAL INCOME TAX ISSUES IS NOT INTENDED OR WRITTEN TO BE USED, AND SUCH DESCRIPTION CANNOT BE USED, BY ANY TAXPAYER FOR THE PURPOSE OF AVOIDING ANY PENALTIES THAT MAY BE IMPOSED ON THE TAXPAYER UNDER FEDERAL INCOME TAX LAW. SUCH DESCRIPTION IS WRITTEN IN CONNECTION WITH THE CONFIRMATION OF THE PLAN AND MAY BE VIEWED AS A MARKETING DOCUMENT BY THE INTERNAL REVENUE SERVICE. THIS DESCRIPTION IS LIMITED TO THE SPECIFIC FEDERAL INCOME TAX MATTERS DESCRIBED HEREIN. IT IS POSSIBLE THAT ADDITIONAL ISSUES MAY EXIST THAT COULD AFFECT THE FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN OR OTHER FEDERAL INCOME TAX MATTERS DISCUSSED HEREIN AND THIS DISCUSSION DOES NOT CONSIDER OR PROVIDE ANY CONCLUSIONS WITH RESPECT TO ANY SUCH ADDITIONAL ISSUES. EACH TAXPAYER IS STRONGLY URGED TO SEEK ADVICE BASED ON THE TAXPAYER'S PARTICULAR CIRCUMSTANCES FROM SUCH TAXPAYER'S INDEPENDENT TAX ADVISOR.

THE DESCRIPTION OF CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN PROVIDED BELOW IS SOLELY FOR THE PURPOSE OF COMPLIANCE WITH SECTION 1125(a) OF THE BANKRUPTCY CODE. THE DESCRIPTION IS BASED ON THE INTERNAL REVENUE CODE OF 1986, AS AMENDED (THE "INTERNAL REVENUE CODE") TREASURY REGULATIONS, JUDICIAL DECISIONS AND ADMINISTRATIVE DETERMINATIONS, ALL AS IN EFFECT ON THE DATE OF THIS DISCLOSURE STATEMENT. CHANGES IN ANY OF THESE AUTHORITIES OR IN THEIR INTERPRETATION MAY HAVE RETROACTIVE EFFECT, WHICH MAY CAUSE THE FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN TO DIFFER MATERIALLY FROM THE CONSEQUENCES DESCRIBED BELOW. EXCEPT AS PROVIDED BELOW, NO RULING HAS BEEN REQUESTED FROM THE IRS AND NO LEGAL OPINION HAS BEEN REQUESTED FROM COUNSEL CONCERNING ANY TAX CONSEQUENCE OF THE PLAN, AND NO TAX OPINION OR ADVICE IS GIVEN BY THIS DISCLOSURE STATEMENT.

This description does not cover all aspects of federal income taxation that may be relevant to the Debtor or holders of Claims or Interests. For example, the description does not address issues of special concern to certain types of taxpayers, such as dealers in securities, life insurance companies, financial institutions, tax exempt organizations and foreign taxpayers, nor is it intended to address all of the possible federal income tax consequences to holders of Claims and Interests in the Debtor. This description also does not discuss the possible state tax or non-U.S. tax consequences that might apply to the Debtor or to holders of Claims or Interests.

28

**B.      Tax Consequences of Payment of Allowed Claims
Pursuant to Plan Generally**

The federal income tax consequences of the implementation of the Plan to the holders of Allowed Claims will depend, among other things, on the consideration to be received by the holder, whether the holder reports income on the accrual or cash method, whether the holder's Claim is Allowed or Disputed on the Effective Date, and whether the holder has taken a bad debt deduction or a worthless security deduction with respect to its Claim.

(i)  Recognition of Gain or Loss

In general, a holder of an Allowed Claim or Interest should recognize gain or loss equal to the amount realized under the Plan in respect of its Claim less the holder's tax basis in the Claim. Any gain or loss recognized in the exchange may be long-term or short-term capital gain or loss or ordinary income or loss, depending upon the nature of the Allowed Claim and the holder, the length of time the holder held the Claim and whether the Claim was acquired at a market discount. If the holder realizes a capital loss, the holder's deduction of the loss may be subject to limitation. The holder's tax basis for any property received under the Plan generally will equal the amount realized.

(ii) Bad Debt or Worthless Security Deduction

A holder who receives in respect of an Allowed Claim an amount less than the holder's tax basis in the Claim may be entitled in the year of receipt (or in an earlier or later year) to a bad debt deduction in some amount under section 166(a) of the Internal Revenue Code. The rules governing the character, timing and amount of bad debt deductions place considerable emphasis on the facts and circumstances of the holder, the obligor and the instrument with respect to which a deduction is claimed. Holders of Allowed Claims, therefore, are urged to consult their tax advisors with respect to their ability to take such a deduction.

## XIII.   <u>CONFIRMATION OF PLAN – REQUIREMENTS</u>

In order for the Plan to be confirmed, the Bankruptcy Code requires, among other things, that the Plan be proposed in good faith, that the plan proponent disclose specified information concerning payments made or promised to insiders, and that the Plan comply with the applicable provisions of chapter 11 of the Bankruptcy Code.

Section 1129(a) of the Bankruptcy Code also requires that if any Class of Claims is impaired, that at least one Class of Claims has accepted the Plan ("<u>Minimum Voting Threshold</u>"), that Confirmation of the Plan is not likely to be followed by the need for further financial reorganization, and that the Plan be fair and equitable with respect to each Class of Claims or Interests which is impaired under the Plan.  The Bankruptcy Court can confirm the Plan if it finds that all of the requirements of section 1129(a) have been met.  The Debtor believes that the Plan meets all of these requirements.

### A.    Absolute Priority Rule

To satisfy the absolute priority rule, the Plan must provide that the holder of any Claim or Interest that is junior to the Claims of the dissenting Class will not receive or retain under the Plan on account of such junior Claim or interest any property unless the Claims of the dissenting Class are paid in full.

The Debtor believes that the Plan satisfies the absolute priority rule. All claims senior to Class 4 Interests are unimpaired and will be paid in full under the Plan.

### B.    Best Interest of Creditors Test; Liquidation Analysis

Under the best interest of creditors test, the Plan is confirmable if, with respect to each impaired Class of Claims or Interests, each holder of an Allowed Claim or Allowed Interest in such Class has either (i) accepted the Plan, or (ii) receives or retains under the Plan, on account of its Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount such holder would receive or retain if the Debtor were to be liquidated under chapter 7 of the Bankruptcy Code.

There are no impaired Creditors under the Plan. As a result, the best interest of creditors test is not applicable to the Plan. To the extent that the best interest of creditors test is determined to be applicable, the Debtor submits that each Holder of an Allowed Claim or Allowed Interest will receive property of a value that is not less than the amount such Holder would receive if the Debtor were to be liquidated under Chapter 7 of the Bankruptcy Code.

In applying the best interest test, it is possible that Claims in a chapter 7 case may not be classified in the same manner as provided for by the Plan.  Priorities and order of Distribution of estate assets are established by the applicable provisions of chapter 7.  Under those provisions, each class of Claims is paid in a descending order of priority.  No junior classes of Claims are paid until all senior classes have received payment in full.  In the event that available assets are insufficient to pay all members of such class in full, then each member of the class shares on a pro rata basis.

The Debtor believes that the primary advantages of the Plan over a chapter 7 liquidation is that Creditors will likely receive more under the Plan than they would in a chapter 7 case and receive their Distributions earlier.  Costs would increase by the amount of the additional administrative expenses likely to be incurred in such a chapter 7 case, including the costs of time-consuming investigations and discovery.  The process of other Claims resolution will proceed without the necessity for additional investigation by a chapter 7 trustee and its separate and new professionals, the Plan offers the opportunity to avoid additional administrative costs and the resulting delay which would result from a chapter 7 liquidation.  The Debtor therefore believes that the Plan will result in lower total administrative costs, and higher recoveries for Creditors than would the liquidation of the Debtor's assets under chapter 7 of the Bankruptcy Code.  A liquidation analysis that demonstrates the lower recovery for creditors in a chapter 7 liquidation is annexed hereto as **Exhibit B**.

Thus, the Debtor believes the Plan satisfies the "best interests of creditors test", and, indeed, that the Plan is in the best interests of Creditors.

## XIV.   PROCEDURES FOR VOTING ON PLAN

As described above, pursuant to the Bankruptcy Code, a plan groups various Claims and Interests into classes, each consisting of parties having similar legal rights in relation to a debtor. Each class may then be treated as either "impaired" or "unimpaired" under a plan.

There are three ways in which a plan may leave a claim or interest "unimpaired." First, a plan may not propose to alter the legal, equitable or contractual rights of the holder of the claim or interest.  Second, all defaults (excluding those covered by Section 365(b)(2) of the Bankruptcy Code) may be cured and the original terms of the obligation reinstated.  Third, a plan may provide for the payment in full of the obligation to the holder of the claim or interest.

If a class is unimpaired, then it is conclusively presumed to vote in favor of a plan.

Under the Plan, and in accordance with the Bankruptcy Code, all Creditors are unimpaired under the Plan. As a result, the Debtor is not soliciting votes to accept or reject the Plan.

## XV.   CONFIRMATION HEARING

The Confirmation Hearing will be held by the Honorable Sean H. Lane, United States Bankruptcy Judge, on December 17, 2015 at 10:00 a.m., in the United States Bankruptcy Court, Southern District of New York, Courtroom 701, One Bowling Green, New York, New York 10004.  At that hearing, the Bankruptcy Court will decide whether the Plan should be confirmed, and will hear and decide any and all objections to the Plan.  Any Creditor, or other party in interest who wishes to object to Confirmation of the Plan, or to the classification of Claims and Interests provided in the Plan, must, not later than 4:00 p.m. on December 10, 2015, file an objection with the Clerk's Office, United States Bankruptcy Court, Southern District Of New York, One Bowling Green, New York, New York 10004, and serve a copy of the objection on the attorneys for the Debtor, Klestadt Winters Jureller Southard & Stevens LLP, 200 West 41st Street, 17th Floor, New York, New York 10036, Attn: Tracy L. Klestadt, Esq.

Any objections to the Plan which are not filed and served by the above date may not be considered by the Bankruptcy Court.   Any person or entity who files an objection to Confirmation of the Plan or to the classification of Claims and Interests provided in the Plan must also attend the Confirmation Hearing, either in person or through counsel.

If the Plan is confirmed, its provisions will bind the Estate and any and all entities, including all holders of Claims and Interests, whether or not the Claim or Interest of such claimant or interest holder is impaired under the Plan and whether or not the claimant or interest holder has, either individually or by a Class, voted to accept the Plan.

Dated: New York, New York
November 12, 2015

ZELOUF INTERNATIONAL CORP.


By: _/s/ Danny Zelouf_____
       Danny Zelouf
       President


KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP


By: _/s/ Tracy L. Klestadt_____
       Tracy L. Klestadt
       Joseph C. Corneau
200 West 41st Street, 17th Floor
New York, New York 10036
Tel: (212) 972-3000
Fax: (212) 972-2245

*Attorneys for the Debtor and Debtor-in-Possession*

**<u>Exhibit A</u>**

**The Plan**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| ZELOUF INTERNATIONAL CORP., | : | Case No. 15-11501 (SHL) |
| | : | |
| | : | |
| Debtor. | : | |
| | : | |

**PLAN OF REORGANIZATION FOR ZELOUF INTERNATIONAL CORP.
PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

Klestadt Winters Jureller Southard & Stevens, LLP
200 West 41st Street, 17th Floor
New York, New York 10036
Tel: (212) 972-3000
Fax: (212) 972-2245

*Attorneys for the Debtor and Debtor-in-Possession*

Dated: New York, New York
        November 12, 2015

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1

ARTICLE 1 – DEFINITIONS AND RULES OF INTERPRETATION .......................... 1

    A.     Definitions.................................................................................................. 1

    B.     Rules of Interpretation ............................................................................. 7

ARTICLE 2 – PAYMENT OF CLAIMS NOT REQUIRED TO BE CLASSIFIED......... 7

    2.1. Administrative Claims  ........................................................................... 7

    2.2. Professional Fee Claims ......................................................................... 8

    2.3. Priority Tax Claims ................................................................................ 8

ARTICLE 3 – CLASSIFICATION OF CLAIMS AND INTERESTS ........................... 8

    3.1. Criterion of Class  .................................................................................. 8

    3.2. Class Categories ..................................................................................... 8

ARTICLE 4 – TREATMENT OF CLASSES OF CLAIMS AND INTERESTS ............. 9

    4.1. Class 1 (Non-Tax Priority Claims) ........................................................ 9

    4.2. Class 2 (NZ Allowed Claim)  ................................................................ 9

    4.3. Class 3 (General Unsecured Claims) .................................................... 10

    4.4. Class 4 (Interests) ................................................................................ 10

ARTICLE 5 – MEANS OF IMPLEMENTATION OF THE PLAN ............................. 10

    5.1. Simultaneous Transactions .................................................................. 10

    5.2. Vesting of Assets in Reorganized Debtor ............................................ 10

    5.3. Preservation of Causes of Action......................................................... 11

    5.4. Insurance Preservation ........................................................................ 11

5.5. Execution of Documents to Effectuate Plan ................................................... 11

5.6. Section 1146 Exemption from Certain Transfer Taxes and
Recording Fees ............................................................................................. 11

5.7. Exit Financing ............................................................................................. 12

5.8. Escrow Release  ........................................................................................... 13

5.9. Plan Distributions ........................................................................................ 13

5.10. Post-Confirmation Date Governance and Management  ............................ 13

5.11. Post-Confirmation Reports and Fees ......................................................... 15

5.12. Deadline for Filing Applications for Professional Fee Claims ................... 15

5.13. Post-Confirmation Date Fees and Expenses ............................................... 15

5.14. Administrative Claim Bar Date  ................................................................. 15

5.15. Disallowance of Claims without Further Order of the Court  ..................... 16

ARTICLE 6 – TREATMENT OF EXECUTORY CONTRACTS & UNEXPIRED
LEASES ............................................................................................ 16

6.1. General Provisions  ...................................................................................... 16

6.2. Cure of Defaults ........................................................................................... 16

6.3. Effect of Assumption .................................................................................... 16

ARTICLE 7 – CONDITIONS PRECEDENT; CONFIRMATION & EFFECTIVE
DATE ................................................................................................. 17

7.1. Conditions Precedent to Confirmation of the Plan  ...................................... 17

7.2. Conditions Precedent to the Effective Date  ................................................. 17

7.3. Waiver of Conditions Precedent  .................................................................. 17

ARTICLE 8 – DISCHARGE; INJUNCTIONS; EXCULPATION................................. 17

8.1. Discharge ...................................................................................................... 17

8.2. Injunctions..................................................................................................... 18

(a) Injunctions Against Interference with Consummation or
Implementation of Plan ........................................................................ 18

(b) Plan Injunction ................................................................................. 18

8.3. No Bar to Claims Against Third Parties ...................................................... 19

8.4. Exculpation ................................................................................................. 19

8.5. Release of Liens, Claims and Encumbances................................................. 20

8.6. No Release of Plan Obligations ................................................................... 20

8.7. No Modification of Res Judicata Effect ....................................................... 20

ARTICLE 9 – PROVISIONS GOVERNING DISTRIBUTIONS ................................. 20

9.1. Payment in U.S. Dollars .............................................................................. 20

9.2. Distributions Only on Business Days ........................................................... 21

9.3. Transmittal of Payments and Notices .......................................................... 21

9.4. Record Date for Distributions...................................................................... 21

9.5. Unclaimed Distributions ............................................................................. 21

9.6. Claims Administration ................................................................................ 21

(a) Objections to Claims ........................................................................ 21

(b) Reservation of Rights....................................................................... 22

(c) Filing Objections .............................................................................. 22

(d) Determination of Claims .................................................................. 22

(e) No Distribution Pending Allowance ................................................. 22

9.7. Disputed Claims ......................................................................................... 22

9.8. Claims by Persons From Which Property is Recoverable ............................. 23

9.9. Timing of Distributions on Disputed Claims Subsequently Allowed .......... 24

iv

9.10. Disputed Distribution ................................................................................ 24

9.11. Claims Filed After the Applicable Bar Date ............................................ 24

9.12. Amendments to Proofs of Claim................................................................ 24

9.13. Setoff and Recoupment.............................................................................. 24

9.14. Compliance with Tax Withholding and Reporting Requirements ............. 24

9.15. No Postpetition Interest on Claims ........................................................... 25

ARTICLE 10 – PLAN INTERPRETATION AND CONFIRMATION.......................... 25

10.1. Procedures Regarding Objections to Designation of Classes as
Impaired or Unimpaired.................................................................................. 25

10.2. Withdrawal and Modification of Plan ........................................................ 25

10.3. Governing Law ........................................................................................... 25

10.4. Presumed Acceptance of Plan.................................................................... 25

ARTICLE 11 – RETENTION OF JURISDICTION BY BANKRUPTCY COURT ...... 25

ARTICLE 12 – MISCELLANEOUS PROVISIONS ..................................................... 27

12.1. Headings ..................................................................................................... 27

12.2. No Attorneys' Fees .................................................................................... 27

12.3. Notices ........................................................................................................ 27

12.4. Claims in Dollars ....................................................................................... 27

12.5. Binding Effect............................................................................................. 27

## INTRODUCTION

Zelouf International Corp. ("<u>ZIC</u>" or the "<u>Debtor</u>"), proposes this chapter 11 plan (the "<u>Plan</u>") pursuant to section 1121 of the Bankruptcy Code.

## ARTICLE 1 - DEFINITIONS AND RULES OF INTERPRETATION

### A.     <u>Definitions</u>.

The following terms, when used in this Plan, or any subsequent amendments or modifications thereof, shall have the meanings set forth below and such definitions shall be equally applicable to the singular and plural of terms defined.

**1.1**     "<u>Administrative Claim</u>" means a Claim for costs and expenses of administration allowed under sections 503(b) and 507(a)(1) including, without limitation, (a) any actual, necessary costs and expenses of preserving the Estate, (b) any indebtedness or obligations incurred or assumed by the Debtor in the ordinary course of business in connection with the conduct of its business during the Chapter 11 Case, (c) any Professional Fee Claims, whether or not fixed before or after the Effective Date, and (d) any fees or charges assessed against the Debtor's Estate under section 1930, chapter 123, title 28, United States Code.

**1.2**     "<u>Administrative Claims Bar Date</u>" means the date that is thirty (30) days after service of a notice that the Effective Date of the Plan has occurred and of the Administrative Claims Bar Date.

**1.3**     "<u>Allowed Administrative Claim</u>" means an Administrative Claim, to the extent it is or has become an Allowed Claim.

**1.4**     "<u>Allowed Claim/Allowed Interest</u>" means a Claim or Interest against the Debtor (i) proof of which was originally filed within the applicable period of limitation fixed by the Bankruptcy Court in accordance with Rule 3003(c)(3) of the Bankruptcy Rules, or (ii) if no proof of Claim or Interest has been timely filed, which has been or hereafter is listed by the Debtor in its Schedules as liquidated in an amount and not disputed or contingent, as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order, or as to which an objection has been interposed and such Claim or Interest has been allowed in whole or in part by a Final Order, or (iii) a claim or interest that is allowed by final order of the Bankruptcy Court. For purposes hereof, an "Allowed Claim" shall include any Claim arising from the recovery of property under sections 550 or 553 of the Bankruptcy Code and allowed in accordance with section 502(h) of the Bankruptcy Code,  any Claim allowed under or pursuant to the terms of this Plan, or any Claim that has been allowed by a Final Order, provided, however, that (i) Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder unless otherwise specified herein or by order of the

Bankruptcy Court, and (ii) "Allowed Claim" shall not include any Claim subject to disallowance in accordance with section 502(d) of the Bankruptcy Code.

**1.5** "Assets" means any and all property of the Estate, including without limitation all property and other interests identified in section 541(a) of the Bankruptcy Code. Without limiting the foregoing, Assets shall include all of the Debtor's real, personal, tangible and intangible property, wherever located and whether acquired prior to or after the Petition Date, including Cash, furniture, fixtures, equipment, artwork, intellectual property, Causes of Action (including Avoidance Actions), together with the proceeds and products, replacements and accessions thereof.

**1.6** "Avoidance Action" means any Causes of Action to avoid or recover a transfer of property of the Estate or an interest of the Debtor in property, including, without limitation, actions arising under sections 506, 510, 541, 542, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any other applicable federal, state or common law.

**1.7** "Bankruptcy Code" means title 11 of the United States Code, as amended, in effect and applicable to the Chapter 11 Case.

**1.8** "Bankruptcy Court" or "Court" means the United States Bankruptcy Court for the Southern District of New York wherein the Chapter 11 Case is pending.

**1.9** "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as promulgated by the Supreme Court of the United States, as amended, and any Local Rules of the Bankruptcy Court, as amended, in effect and applicable to the Chapter 11 Case.

**1.10** "Bar Date" means November 12, 2015, the date established by the Bankruptcy Court as the deadline to file proofs of claim, unless the Bankruptcy Court has set a different date by which a specific Creditor must file a proof of claim, in which case it means, for such specific Creditor, such different date set by the Court.

**1.11** "Business Day" means any day other than a Saturday, Sunday or a "legal holiday," as such term is defined in Bankruptcy Rule 9006(a).

**1.12** "Cash" means legal tender of the United States of America.

**1.13** "Causes of Action" means any and all Claims, rights, actions, chose in action, suits, causes of action, liens, judgments and damages belonging to the Debtor or its Estate and any and all liabilities, obligations, covenants, undertakings and debts owing to the Estate, whether arising prior to or after the Petition Date, and in each case whether known or unknown, in law, equity or otherwise.

**1.14** "Chapter 11 Case" means the case concerning the Debtor, commenced on June 8, 2015, under chapter 11 of the Bankruptcy Code, administered under case number 15-11501 (SHL) in the Bankruptcy Court.

2

**1.15**    "Claim" means, as defined in Bankruptcy Code section 101(5): (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**1.16**    "Claims Objection Bar Date" means the date that is the later of (i) 180 days after the Effective Date, or (ii) as to Proofs of Claim filed after the applicable Claims Bar Date, the 60th day after a Final Order is entered by the Bankruptcy Court deeming the late-filed Proof of Claim to be treated as timely filed.

**1.17**    "Claim Transfer Document" shall have the meaning set forth in Section 9.4 of the Plan.

**1.18**    "Class" means a category of Claims or Interests described in Article 3 of the Plan.

**1.19**    "Confirmation" means entry of the Confirmation Order on the docket of the Chapter 11 Case.

**1.20**    "Confirmation Date" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

**1.21**    "Confirmation Hearing" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.22**    "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as the Plan may be amended by its terms and consistent with applicable law, and any findings of fact and conclusions of law contained in the Confirmation Order or a separate document entered substantially contemporaneously therewith.

**1.23**    "Consummation" means the occurrence of the Effective Date.

**1.24**    "Creditor" means any Person holding a Claim against the Debtor or, pursuant to section 102(2) of the Bankruptcy Code, against property of the Debtor, that arose or is deemed to have arisen on or prior to the Petition Date, including, without limitation, a Claim against the Debtor of the kind specified in Bankruptcy Code sections 502(g), 502(h) or 502(i).

**1.25**    "Debtor" means Zelouf International Corp., the debtor in the Chapter 11 Case.

**1.26**    "Disallowed" means, when referring to a Claim or Interest, a Claim (including a Scheduled Claim) or Interest, or any portion of a Claim or Interest, which has been disallowed or expunged by a Final Order.

**1.27**   "Disclosure Statement" means the disclosure statement for the Plan and all exhibits annexed thereto or otherwise filed in connection therewith, approved by the Bankruptcy Court in accordance with section 1125 of the Bankruptcy Code.

**1.28**   "Disputed" means, with respect to a Claim against or Interest in, the Debtor, the extent the allowance of such Claim or Interest is the subject of a timely objection, complaint or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Confirmation Order, or is otherwise disputed in accordance with applicable law, which objection, request for estimation, or dispute has not been withdrawn with prejudice, or determined by a Final Order.

**1.29**   "Disputed Claims Reserve" means the segregated account established by the Debtor consistent with Section 9.7 of the Plan.

**1.30**   "Distribution" means any distribution made pursuant to the terms of this Plan.

**1.31**   "Distribution Date" means any date on which a Distribution is made to holders of Allowed Claims under this Plan.  The first Distribution shall occur on the Effective Date or as soon as practicable after the Effective Date.

**1.32**   "Effective Date" means the first Business Day after the entry of the Confirmation Order that (i) the conditions to effectiveness of the Plan set forth in Section 7.2 of the Plan have been satisfied or otherwise waived, and (ii) the effectiveness of the Confirmation Order has not been stayed.

**1.33**   "Estate" means the Debtor's estate created pursuant to section 541 of the Bankruptcy Code upon the Petition Date.

**1.34**   "Executory Contract" means a contract that the Debtor may assume or reject pursuant to sections 365 or 1123 of the Bankruptcy Code.

**1.35**   "Exit Financing" means the financing facility obtained by the Debtor from Merchant Factors Corp. to pay the NZ Allowed Claim.

**1.36**   "Exit Financing Documents" means the Discount Factoring Agreement and documents ancillary thereto to be executed by the Debtor and MFC on the Effective Date to implement the Exit Financing.

**1.37**   "Fee Application Deadline" shall have the meaning set forth in Section 5.12 of the Plan.

**1.38**   "Final Order" means an order or judgment of the Bankruptcy Court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall then be pending; provided, however, if an appeal, or writ of certiorari, reargument or rehearing thereof has been filed or sought, such order  shall have been affirmed by the highest court to which such order was appealed, or certiorari shall

4

have been denied or reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, further, that the possibility that a motion under section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be but has not then been filed with respect to such order, shall not cause such order not to be a Final Order.

 **1.39**  "General Unsecured Claim" means any Unsecured Claim against the Debtor that is not an Administrative Expense Claim, Professional Fee Claim, Priority Tax Claim, or Non-Tax Priority Claim, but excluding the NZ Allowed Claim.

 **1.40**  "General Unsecured Creditor" means any holder of a General Unsecured Claim.

 **1.41**  "Holder" means a Person holding a Claim against or an Interest in the Debtor.

 **1.42**  "Impaired" means, with respect to any Claim or Interest, a Claim or Interest that is "impaired" within the meaning of section 1124 of the Bankruptcy Code.

 **1.43**  "Interest" means the ownership and related rights and interests of Danny Zelouf and Rony Zelouf.

 **1.44**  "MFC" means Merchant Factors Corp., which will provide the Exit Financing.

 **1.45**  "Non-Tax Priority Claim" means a Claim, other than an Administrative Expense Claim or a Priority Tax Claim, which is entitled to priority in payment under sections 507(a)(1), (2) (3), (4), (5), (6), (7), or (9) of the Bankruptcy Code.

 **1.46**  "NZ" means Nahal Zelouf.

 **1.47**  "NZ Allowed Claim" shall mean the allowed general unsecured claim of Nahal Zelouf in the amount of $8,000,000 as agreed to in the NZ Settlement Agreement.

 **1.48**  "NZ Settlement Agreement" means the Settlement Agreement and Release by and between the Debtor, Danny Zelouf and Nahal Zelouf dated October 6, 2015 and approved by the Bankruptcy Court at a hearing held on November 4, 2015.

 **1.49**  "Person" means any individual, corporation, partnership, association, joint venture, limited liability company, limited liability partnership, estate, trust, receiver, trustee, unincorporated organization or governmental unit or subdivision thereof or other entity.

 **1.50**  "Petition Date" means June 8, 2015, the date on which the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code.

**1.51** "Plan" means this Plan and any exhibits annexed hereto or otherwise filed in connection with the Plan, and any documents delivered in connection herewith, as the same may be amended or modified from time to time by any duly authorized and permitted amendment or modification.

**1.52** "Plan Supplement" means the compilation of documents and forms of documents, schedules and exhibits to the Plan, to be filed by the Debtor no later than seven (7) days prior to the Confirmation Hearing. The Plan Supplement may include, among other things, documents related to the Exit Financing.

**1.53** "Priority Tax Claim" means a Claim or a portion of a Claim of a governmental unit against the Debtor which is entitled to priority in payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.54** "Professional Fee Claim" means any Claim of a professional retained in the Chapter 11 Case pursuant to sections 327 of the Bankruptcy Code, for compensation or reimbursement of costs and expenses relating to services incurred prior to and including the Effective Date, when and to the extent any such Claim is allowed by the Bankruptcy Court pursuant to sections 329, 330, 331, or 503(b) of the Bankruptcy Code.

**1.55** "Professional" means the professional persons and firms retained by the Debtor pursuant to section 327 of the Bankruptcy Code during the Chapter 11 Case.

**1.56** "Proof of Claim" means a proof of claim filed with the Clerk of the Bankruptcy Court against the Debtor.

**1.57** "Record Date" means the Confirmation Date.

**1.58** "Reorganized Debtor" means the Debtor, as reorganized pursuant to and under the Plan, or any successor thereto, by merger, consolidation or otherwise, on or after the Effective Date.

**1.59** "Scheduled Claim" means a Claim that is listed in the Debtor's Schedules, as the same may have been amended.

**1.60** "Schedules" means the schedules of assets and liabilities, schedules of executory contracts and unexpired leases, statement of financial affairs, and other schedules and statements filed by the Debtor pursuant to Federal Rule of Bankruptcy Procedure 1007, and any amendments thereto.

**1.61** "Unexpired Lease" means a lease that the Debtor may assume or reject pursuant to sections 365 or 1123 of the Bankruptcy Code.

**1.62** "Unimpaired" means any Claim or Interest that is not Impaired.

**1.63** "U.S. Trustee" means any and all representatives and employees of the Office of the United States Trustee for the Southern District of New York.

6

**1.64** "Unclaimed Distribution" means any Distribution that is unclaimed after ninety (90) days following any Distribution Date. Unclaimed Distributions shall include, without limitation: (i) checks (and the funds represented thereby) which have been returned as undeliverable without a proper forwarding address; (ii) funds representing checks which have not been paid or negotiated; and (iii) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of a valid address.

**1.65** "Unsecured Claim" means any Claim which is not secured by an offset or "lien," as that term is defined in section 101(37) of the Bankruptcy Code, including, but not limited to, a "judicial lien" as that term is defined at section 101(36) of the Bankruptcy Code, against any property of the Estate, but only to the extent of the "value," as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012, or as otherwise agreed to, of such Creditor's interest in the Debtor's interest in such property.

## B. **Rules of Interpretation**

For purposes of this Plan: (a) where appropriate in the relevant context, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in the Plan, any references in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) unless otherwise provided in the Plan, any reference in the Plan to an existing document or appendix filed or to be filed means such document or appendix, as it may have been or may be amended, modified or supplemented pursuant to the Plan; (d) unless otherwise specified herein, any reference to a Person as a holder of a Claim or Interest includes that Person's successors, assigns and affiliates; (e) unless otherwise specified, all references in the Plan to Sections and Articles are references to Sections and Articles of or to the Plan; (f) the words "herein", "hereto" and "hereof" refer to the Plan in its entirety rather than to a particular portion of the Plan; and (g) the rules of construction set forth in section 102 of the Bankruptcy Code will apply to the Plan. To the extent that the Plan is inconsistent with the Disclosure Statement, the provisions of the Plan shall be controlling.

## ARTICLE 2 - PAYMENT OF CLAIMS NOT REQUIRED TO BE CLASSIFIED

Consistent with section 1123(a)(1) of the Bankruptcy Code, classes are not designated for Administrative Expense Claims, Professional Fee Claims and Priority Tax Claims.

### 2.1 **Administrative Claims**.

All Allowed Administrative Claims, other than Professional Fee Claims, shall be paid in full, in Cash, in such amounts as are incurred in the ordinary course of the Debtor's business, or in such amounts as may be Allowed by the Bankruptcy Court (a) as soon as practicable following the later of the Effective Date or the date upon which the Court enters a Final Order allowing any such Administrative Claim, or (b) upon such other terms as may exist in accordance with the ordinary course of the Debtor's business

or (c) as may be agreed upon between the holder of any such Administrative Claim and the Debtor.

### 2.2    Professional Fee Claims.

The Debtor shall pay all Professional Fee Claims as soon as practicable after a Final Order has awarded such compensation and reimbursement of expenses pursuant to proper application in accordance with Section 5.12 hereof.

### 2.3    Priority Tax Claims.

Unless otherwise agreed to by the Debtor and a holder of an Allowed Priority Tax Claim, each holder of an Allowed Priority Tax Claim will receive, at the Debtor's option, (i) an amount in Cash equal to the Allowed amount of such Priority Tax Claim as soon as practicable following the later of (a) the Effective Date, and (b) the date on which such Priority Tax Claim becomes an Allowed Claim; or (ii) deferred Cash payments following the Effective Date, over a period ending not later than five (5) years after the Petition Date, in an aggregate amount equal to the Allowed amount of such Priority Tax Claim (with any interest to which the holder of such Priority Tax Claim may be entitled calculated in accordance with section 511 of the Bankruptcy Code) in accordance with section 1129(a)(9)(C) of the Bankruptcy Code; provided, however, that all Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as they become due.

## ARTICLE 3 - CLASSIFICATION OF CLAIMS AND INTERESTS

### 3.1    Criterion of Class.

A Claim is in a particular Class only to the extent that the Claim qualifies within the description of that Class, and is in a different Class or Classes to the extent that the remainder of the Claim qualifies within the description of the different Class or Classes.

### 3.2    Class Categories.

The following classes of Claims and Interests are designated pursuant to and in accordance with section 1123(a)(1) of the Bankruptcy Code, which Classes shall be mutually exclusive:

| Class | Class Designation | Status/Voting Rights |
|---|---|---|
| Class 1 | Non-Tax Priority Claims | Unimpaired/Deemed to Accept/Votes Will Not Be Solicited |
| Class 2 | NZ Allowed Claim | Unimpaired/Deemed to Accept/Votes Will Not Be Solicited |
| Class 3 | General Unsecured Claims | Unimpaired/Deemed to Accept/Votes Will Not Be Solicited |
| Class 4 | Interests | Unimpaired/Deemed to Accept/Votes Will Not Be Solicited |

## ARTICLE 4 - TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

The following treatment of and consideration to be received by holders of Allowed Claims and Allowed Interests pursuant to this Plan shall be in full settlement, release and discharge of such Allowed Claims and Allowed Interests.

### 4.1     Class 1 (Non-Tax Priority Claims).

On the Effective Date, or as soon thereafter as is reasonably practicable, in full satisfaction of such Allowed Non-Tax Priority Claim, each holder of an Allowed Non-Tax Priority Claim shall receive (a) an amount in Cash equal to the Allowed amount of such Non-Tax Priority Claim, or (b) such other treatment as to which the Debtor and the holder of such Allowed Non-Tax Priority Claim shall have agreed upon in writing.  In the event any Disputed Non-Tax Priority Claims exist on the Effective Date, the Debtor shall hold and maintain Cash in an amount equal to that portion of the Disputed Claims Reserve attributable to all Disputed Non-Tax Priority Claims until such dispute is resolved consensually or by order of the Bankruptcy Court.

### 4.2     Class 2 (NZ Allowed Claim).

On the Effective Date, in accordance with and pursuant to the terms of the NZ Settlement Agreement, NZ shall receive payment in full of the NZ Allowed Claim in full release, satisfaction and discharge of the NZ Allowed Claim.

On the Effective Date, upon full payment of the NZ Allowed Claim, NZ, on behalf of herself, her heirs, successors, and assigns, hereby releases and discharges all of the parties listed on Exhibit B of the NZ Settlement Agreement and each of their respective officers, directors, shareholders, employees, attorneys, agents, accountants and other professionals (acting in such capacities) (the "Nahal Released Parties") from any and all actions and causes of action, suits, debts, obligations, covenants, rights, claims, counterclaims, accounts, reckonings, bonds, bills, specialties, contracts, controversies, agreements, promises, variances, trespasses, damages, debts, sums of money, judgments, extents, executions, demands, and liabilities of any type or nature whatsoever, whether known or unknown, suspected or unsuspected, asserted or unasserted, direct or indirect, vested, fixed, contingent or conditional, whether in contract or tort, at law or in equity, that she now has, ever had or can, may or shall have for, upon, or by reason of any matter, cause or thing whatsoever, against any or all of the Nahal Released Parties from the beginning of the world to the Effective Date, with the exception of obligations under the NZ Settlement Agreement, including the tax indemnification provisions of paragraph 9 NZ Settlement Agreement, which shall continue.

On the Effective Date, and in consideration of the terms and provisions of the NZ Settlement Agreement and other good and valuable consideration, the Debtor and the Nahal Released Parties shall release and discharge Nahal, her heirs, executors, administrators, successors and assigns and each of their respective attorneys, agents, accountants and other professionals (acting in such capacities)  (the "Debtor Released Parties") in the form attached as Exhibit C of the NZ Settlement Agreement, from any and all actions and causes of action, suits, debts, obligations, covenants, rights, claims, counterclaims, accounts, reckonings, bonds, bills, specialties, contracts, controversies,

9

agreements, promises, variances, trespasses, damages, debts, sums of money, judgments, extents, executions, demands, and liabilities of any type or nature whatsoever, whether known or unknown, suspected or unsuspected, asserted or unasserted, direct or indirect, vested, fixed, contingent or conditional, whether in contract or tort, at law or in equity, that any of them now has, ever had or can, may or shall have for, upon, or by reason of any matter, cause or thing whatsoever, against any or all of the Debtor Released Parties from the beginning of the world to the Effective Date.

The NZ Settlement Agreement and each term thereof is incorporated herein by reference, and all of the terms and conditions therein shall apply to this Plan. The inclusion or non-inclusion of any term of the NZ Settlement Agreement herein shall have no effect on the enforceability thereof.

### 4.3     Class 3 (General Unsecured Claims).

On the Effective Date, or as soon thereafter as is reasonably practicable, in full satisfaction of such Allowed General Unsecured Claim, each holder of an Allowed General Unsecured Claim shall receive one or more Distributions totaling 100% of the amount of such Allowed General Unsecured Claim, plus post-Petition Date interest pursuant to any applicable contract rate or, if there is no applicable contract rate, the applicable federal rate.

### 4.4     Class 4 (Interests).

The holders of Interests shall retain their Interests in the Reorganized Debtor.

## ARTICLE 5 - MEANS OF IMPLEMENTATION OF THE PLAN

### 5.1     Simultaneous Transactions.

Except as otherwise expressly set forth in the Plan, the Confirmation Order or a written agreement by the Debtor or Reorganized Debtor, each action to be taken on the Effective Date shall be deemed to occur simultaneously as part of a single transaction, including, without limitation, the Distributions under the Plan, the implementation of the NZ Settlement Agreement, and the obligations of the Debtor and NZ thereunder.

### 5.2     Vesting of Assets in Reorganized Debtor.

Except as otherwise provided herein or in the Confirmation Order, as of the Effective Date, all property of the Debtor's Estate (including Causes of Action) shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances or interests. On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may operate its business and may use, acquire and dispose of property and compromise or settle any Claims or Causes of Action without supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

5.3     **Preservation of Causes of Action.**

Except as otherwise provided in the Plan, each Cause of Action of the Debtor shall be preserved and, along with the exclusive right to enforce such Cause of Action, shall vest in the Reorganized Debtor on the Effective Date; provided that nothing in this Section 5.3 shall limit the ability under the Bankruptcy Code of any party-in-interest to object to any Claim prior to the Claim Objection Bar Date unless otherwise ordered by the Bankruptcy Court. Unless a Cause of Action is expressly waived, relinquished, released or compromised in the Plan or an order of the Bankruptcy Court, the Reorganized Debtor expressly reserves such Cause of Action for later adjudication and, accordingly, no doctrine of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), laches or other preclusion doctrine shall apply to such Cause of Action as a consequence of the Confirmation, the Plan, the vesting of such Cause of Action in the Reorganized Debtor, any order of the Bankruptcy Court or the Chapter 11 Case. No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as an indication that the Debtor or the Reorganized Debtor, as applicable, will not pursue such Cause of Action.

5.4     **Insurance Preservation**.

Nothing in this Plan shall diminish or impair the enforceability of any insurance policies that may cover Claims against the Debtor, the Reorganized Debtor, or their respective employees, officers, directors, shareholders or any other Person.

5.5     **Execution of Documents to Effectuate Plan**.

From and after the Confirmation Date, the Debtor and the Reorganized Debtor, as applicable, shall have the exclusive power and authority to execute any instrument or document to effectuate the provisions of the Plan. The Confirmation Order shall constitute authorization of the Debtor and Reorganized Debtor, as applicable, to take, or cause to be taken, all actions necessary or appropriate to consummate and implement the provisions of the Plan.

5.6     **Section 1146 Exemption from Certain Transfer Taxes and Recording Fees**.

Pursuant to, and to the fullest extent permitted by, section 1146(a) of the Bankruptcy Code, any transfers from the Debtor to the Reorganized Debtor or to any other Person, pursuant to, in contemplation of, or in connection with the Plan (including any transfer pursuant to: (a) the creation, modification, consolidation, assumption, termination, refinancing and/or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (b) the grant of collateral as security for Exit Financing; or (c) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any

11

way related to the Plan) shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, sales and use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local government officials or agents shall, and shall be directed to, forgo the collection of any such tax, recordation fee or government assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee or government assessment.

     **5.7**    **Exit Financing.**

On the Effective Date, the Reorganized Debtor shall execute the Exit Financing Documents and obtain the Exit Financing from MFC.

The Debtor and Reorganized Debtor, as applicable, shall be authorized to enter into and perform and execute and deliver the Exit Financing Documents. The Debtor and Reorganized Debtor, as applicable, is hereby authorized to borrow under such Exit Financing and use the proceeds of such borrowings for any purpose permitted thereunder, including to fund (a) Distributions under and in accordance with the Plan, and (b) ongoing business operations, general corporate purposes and working capital needs.

Confirmation of the Plan shall be deemed (a) approval of the Exit Financing and all transactions contemplated hereby and thereof, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtor in connection therewith, and (b) authorization for the Debtor and Reorganized Debtor, as applicable, to enter into and perform under the Exit Financing Documents. The Exit Financing Documents shall constitute legal, valid, binding and authorized obligations of the Reorganized Debtor, enforceable in accordance with their terms. The financial accommodations to be extended pursuant to the Exit Financing Documents shall be deemed to have been extended in good faith, for legitimate business purposes, and not be subject to avoidance, recharacterization or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law.

On the Effective Date, all of the liens and security interests to be granted in accordance with the Exit Financing Documents (a) shall be deemed to be approved; (b) shall be legal, binding and enforceable liens on, and security interests in, the collateral granted under the Exit Financing Documents in accordance with the terms of the Exit Financing Documents; (c) shall be deemed perfected on the Effective Date, subject only to such liens and security interests as may be permitted under the Exit Financing Documents, and the priorities of such liens and security interests shall be as set forth in the respective Exit Financing Documents; and (d) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law. The Debtor and the Reorganized Debtor and MFC are authorized to make all filings and

recordings to establish and perfect such liens and security interests under the provisions of the law that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection of the liens and security interests granted under the Exit Financing Documents shall occur automatically by virtue of the entry of the Confirmation Order and funding on or after the Effective Date, and any such filings, recordings, approvals and consents shall not be necessary or required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such liens and security interests to third parties.

**5.8    Escrow Release.**

On the Effective Date, funds being held in escrow by the Debtor's counsel shall be released and directed as the Debtor requests in writing (subject to the requirements of the NZ Settlement Agreement).

**5.9    Plan Distributions.**

As set forth in greater detail in Article IV of the Plan, on the Effective Date, the Debtor will make Distributions to holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Professional Fee Claims, Allowed Non-Tax Priority Claims, and to NZ on account of the NZ Allowed Claim.

At its option, the Debtor may make (i) deferred cash payments to holders of Priority Tax Claims at least quarterly as provided in section 2.3 of the Plan; and (ii) one or more Distributions to holders of Class 3 General Unsecured Claims as provided in section 4.3 of the Plan.

The funding of the Distributions under the Plan shall be made from a combination of (a) Cash on hand as of the Effective Date; (b) the Exit Financing; (c) the funds currently in escrow; and (d) revenues generated by the Debtor on and after the Effective Date. The Debtor believes that these sources are sufficient to implement the Plan and make all Distributions thereunder.

**5.10    Post-Confirmation Date Governance and Management.**

(a)    The certificate and/or articles of incorporation and the by-laws of the Debtor in effect as of the day preceding the Effective Date (the "Organizational Documents") shall remain in full force and effect on and after the Effective Date, except that the Organizational Documents shall be deemed to prohibit, without further notice or filing, the issuance of any non-voting equity securities or any preferred stock until such time as the Plan has been fully consummated.

(b)    On and after the Effective Date, the Reorganized Debtor shall exist and shall be operated under and in accordance with the Organizational Documents, and under the same name as the Debtor, and its authorized capital stock shall be the same as set forth in the Organizational Documents, without the need for the filing of any new or further documents with the Secretary of State of the State of New York or any another governmental agency.

13

(c)      On and after the Effective Date, the management, control and operation of the Reorganized Debtor will be the responsibility of the Board of Directors and the officers of the Reorganized Debtor.  On the Effective Date, the Debtor's current officers shall continue in their respective pre-Confirmation Date corporate roles and positions in the Reorganized Debtor. Specifically, Danny Zelouf shall continue as President of the Reorganized Debtor and Rony Zelouf shall continue as Secretary of the Reorganized Debtor. The compensation paid to the Reorganized Debtor's officers shall be consistent with their pre-Confirmation Date compensation by the Debtor; provided, however, that nothing herein shall constitute a prohibition of any change, increase or decrease in compensation after the Effective Date, which shall be determined by the officers of the Reorganized Debtor in accordance with the Organizational Documents. Danny Zelouf and Rony Zelouf shall also continue in their roles and positions as the sole members of the Reorganized Debtor's Board of Directors.

(d)      Except as provided for in the Plan, no director, officer, manager or employee of the Debtor who continues to serve or be employed by the Reorganized Debtor in any position or capacity after the Effective Date shall be liable to any Person for any Claim that arose prior to the Effective Date in connection with his or her service as a director, officer, manager or employee of the Debtor.

(e)      On the Effective Date, the Organizational Documents of the Reorganized Debtor shall provide or shall be deemed to provide, subject thereafter to the rights of the board of directors and the shareholders of the Reorganized Debtor, to make such changes as they deem appropriate consistent with applicable law, for indemnification of the directors and officers of the Reorganized Debtor with respect to their post-Effective Date conduct to the fullest extent permitted by applicable law of the State of New York.

(f)      On the Effective Date, the sponsorship of any employee benefit plan or any employee welfare benefit plan sponsored by the Debtor, if any (the "Employee Plans") shall be assumed and maintained by the Reorganized Debtor.  The Board of Directors of the Reorganized Debtor will, on or as soon as administratively practicable following the Effective Date, adopt resolutions providing for such assumption as of the Effective Date, authorizing the appropriate officers of the Reorganized Debtor to take any and all actions and to execute any and all documents deemed necessary to implement and effectuate the assumption and maintenance of the Employee Plans, including any required amendments to any plan documents or agreements pursuant to which any such plan was created, sponsored or adopted.  Notwithstanding the foregoing, after the Effective Date, the Reorganized Debtor may terminate or modify any Employee Plan at any time in accordance with the terms of such plan and applicable law.

(g)      The obligations of the Debtor to indemnify any Person serving at any time on or prior to the Effective Date as one of its directors, officers or employees, by reason of such Person's service in such capacity, to the extent provided in the Debtor's Organizational Documents or by a written agreement with the Debtor, or pursuant to applicable general corporation law, each as applicable, shall be deemed and treated as executory contracts that are assumed by the Debtor and the Reorganized Debtor pursuant to the Plan and Section 365 of the Bankruptcy Code as of the Effective Date. Accordingly, such indemnification obligations shall be treated as Allowed Administrative

Expense Claims and shall survive unimpaired and unaffected by entry of the Confirmation Order, irrespective of whether such indemnification is owed for any act or event occurring before or after the Petition Date.

(h)    The Reorganized Debtor may reimburse the directors and officers of the Debtor or Reorganized Debtor for any costs or expenses incurred as a result of or in connection with the Chapter 11 Case, including, without limitation, any advances made by the Debtor's or Reorganized Debtor's officers to fund the Plan.

**5.11    Post-Confirmation Reports and Fees**.

Following the Effective Date and until the Chapter 11 Case is closed, not less than once every ninety (90) days, the Debtor or Reorganized Debtor, as applicable, shall be responsible for the filing of all post-Effective Date reports required during such periods with the U.S. Trustee and payment of all post-Effective Date fees charged or assessed against the Estate under 28 U.S.C. §1930 during such periods together with applicable interest pursuant to 31 U.S.C. § 3717.

**5.12    Deadline for Filing Applications for Professional Fee Claims**.

All parties seeking payment of Professional Fee Claims arising through and including the Confirmation Date must file with the Bankruptcy Court and serve upon the Debtor a final application for payment of reasonable fees and expenses under section 330 of the Bankruptcy Code on or before the first Business Day after the thirtieth (30th) day after the Effective Date (the "Fee Application Deadline").

**5.13    Post-Confirmation Date Fees and Expenses**.

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtor or the Reorganized Debtor, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional or other fees and expenses related to implementation and Consummation of the Plan incurred by the Debtor or the Reorganized Debtor, as applicable. Except as otherwise specifically provided in the Plan, upon the Confirmation Date, any requirement that Professionals comply with sections 327, 328, 329, 330, or 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtor and the Reorganized Debtor may employ and pay any Professional in the ordinary course of business.

**5.14    Administrative Claim Bar Date**.

Persons asserting an Administrative Expense Claim (other than Professional Fee Claims) must file a request for payment of such Administrative Claim on or before 5:00 p.m. prevailing Eastern Time on the date that is 30 days after the mailing of notice of the Effective Date. No payment or Distributions will be made on account of any Administrative Claim until such Claim becomes an Allowed Claim. Any person asserting an Administrative Claim that fails to file and serve an Administrative Claim on or before

15

the Administrative Expense Claims Bar Date shall be forever barred from asserting any such right to payment as against the Debtor, the Estate and the Reorganized Debtor.

### 5.15    Disallowance of Claims without Further Order of the Court.

As of the Confirmation Date, any Scheduled Claim designated as disputed, contingent or unliquidated in amount, and for which a proof of Claim has not been filed by the Creditor, shall be deemed disallowed and expunged. All Scheduled Claims that correspond to a proof of Claim filed by a particular Creditor shall be deemed to have been superseded by such later filed proof of Claim and the Scheduled Claims, regardless of priority, and shall be expunged from the claims register; provided however, that such proofs of Claim shall be subject to objection in accordance with Section 9.6 hereof.  A Claim of a Creditor allowed by Final Order of the Bankruptcy Court shall be deemed to supercede a filed proof of Claim and Scheduled Claims with respect to such Creditor.

## ARTICLE 6 - TREATMENT OF EXECUTORY CONTRACTS & UNEXPIRED LEASES

### 6.1    General Provisions.

All Executory Contracts and Unexpired Leases of the Debtor shall assumed as of the Effective Date, unless a particular executory contract or unexpired lease (i) has previously been assumed or rejected pursuant to order of the Bankruptcy Court or applicable provisions of the Bankruptcy Code, or (ii) has expired or otherwise terminated pursuant to its terms.

### 6.2    Cure of Defaults.

Any payment required to cure a default under an assumed Executory Contract or Unexpired Lease shall be paid in Cash promptly after the Effective Date or, if there is a dispute regarding the assumption or cure of such Executory Contract or Unexpired Lease, the entry of a Final Order or orders resolving such dispute.

### 6.3    Effect of Assumption.

Assumption of any Executory Contract or Unexpired Lease, pursuant to the Plan or otherwise, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, and the deemed waiver of any termination right or remedial provision arising under any such Executory Contract or Unexpired Lease at any time prior to the effective date of its assumption, or as a result of such assumption, the transactions contemplated by the Plan. Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged without further notice to, or action, order or approval of, the Bankruptcy Court, except in the event that the applicable Debtor and the counterparty to an Executory Contract or Unexpired Lease have separately agreed to a waiver or reduction of obligations that would otherwise constitute cure obligations, subject to the counterparties' explicit retention of their rights to assert any such amounts as Unsecured Claims.

16

Each Executory Contract and Unexpired Lease assumed pursuant to this Article 6 or any order of the Bankruptcy Court shall vest in, and be fully enforceable by, the Reorganized Debtor in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court.

## ARTICLE 7 - CONDITIONS PRECEDENT; CONFIRMATION & EFFECTIVE DATE

### 7.1    Conditions Precedent to Confirmation of the Plan.

The following conditions must be satisfied, or otherwise waived by the Debtor in accordance with Section 7.3, on or before the Confirmation Date:

(a) The Funding Requirement (as defined in the NZ Settlement Agreement) shall have been satisfied.

(b) The entry of the Confirmation Order shall be in form and substance reasonably satisfactory to the Debtor and shall contain provisions that, among other things: (i) authorize the implementation of the Plan in accordance with its terms; (ii) approve in all respects the other settlements, transactions, and agreements to be effected pursuant to the Plan; and (iii) find that the Plan complies with all applicable provisions of the Bankruptcy Code, including that the Plan was proposed in good faith and that the Confirmation Order was not procured by fraud.

### 7.2    Conditions Precedent to the Effective Date.

The Effective Date shall not occur and no obligations under the Plan shall come into existence, unless each of the following conditions is met or, alternatively, is waived in accordance with Section 7.3 hereof, on or before the Effective Date:

(a) The Confirmation Order shall have been entered and no stay of its effectiveness of the same shall have been issued within fourteen (14) days following the entry of the Confirmation Order; and

(b) The Debtor shall have sufficient Cash on hand to pay all Administrative Expense Claims, Professional Fee Claims and the NZ Allowed Claim.

### 7.3    Waiver of Conditions Precedent.

Each of the conditions precedent in Sections 7.1 and 7.2 hereof may be waived or modified by the Debtor without further Court approval, in whole or in part.

## ARTICLE 8 – DISCHARGE; INJUNCTION; EXCULPATION

### 8.1    Discharge.

Pursuant to section 1141(d) of the Bankruptcy Code and to the fullest extent permitted by law, the treatment of Claims and Interests under the Plan shall be in full and final satisfaction, settlement, release, discharge, and termination, as of the Effective Date, of all Claims of any nature whatsoever, whether known or unknown, against the Debtor,

17

any property of the Estate, the Reorganized Debtor or any property of the Reorganized Debtor, including all Claims of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim based upon such Claim, debt, or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim based upon such Claim, Interest, liability, or obligation is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim, Interest, liability, or obligation has accepted the Plan.

### 8.2     Injunction.

**(a) Injunctions Against Interference with Consummation or Implementation of Plan.**

**All holders of Claims or Interests shall be enjoined from commencing or continuing any judicial or administrative proceeding or employing any process against the Debtor, the Estate or the Reorganized Debtor, with the intent or effect of interfering with the consummation and implementation of this Plan and the transfers, payments and Distributions to be made hereunder.**

**(b) Plan Injunction.**

**Except as otherwise expressly provided for in the Plan, from and after the Effective Date, all Persons are permanently enjoined from commencing or continuing in any manner against the Debtor, the Reorganized Debtor, their successors and assigns, and their respective assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any Claim, demand, liability, obligation, debt, right, Cause of Action, interest or remedy discharged or exculpated pursuant to the Plan or the Confirmation Order.**

**Except as otherwise expressly provided for in the Plan, from and after the Effective Date, all Persons shall be precluded from asserting against the Debtor, the Reorganized Debtor, their successors and assigns and their respective assets and properties, any other Claims based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.**

**Except as otherwise expressly provided for in the Plan, the rights afforded in the Plan and the treatment of all Claims in the Plan shall be in exchange for and in complete satisfaction of Claims of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, against the Debtor or Reorganized Debtor or any of their respective assets or properties.  On the Effective Date, all such Claims against the Debtor shall be discharged, satisfied and released in full.**

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THE PLAN, ALL PERSONS ARE PERMANENTLY ENJOINED, ON AND AFTER THE EFFECTIVE DATE, ON ACCOUNT OF ANY CLAIM AGAINST THE DEBTOR THAT IS SATISFIED AND DISCHARGED HEREBY, FROM:**

18

(A) **COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTOR, THE REORGANIZED DEBTOR, THEIR RESPECTIVE SUCCESSORS AND ASSIGNS AND THEIR RESPECTIVE ASSETS AND PROPERTIES;**

(B) **ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST THE DEBTOR, THE REORGANIZED DEBTOR, THEIR RESPECTIVE SUCCESSORS AND ASSIGNS AND THEIR RESPECTIVE ASSETS AND PROPERTIES;**

(C) **CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST THE DEBTOR, THE REORGANIZED DEBTOR, PROPERTY OR ESTATE OR PROPERTY OF REORGANIZED DEBTOR;**

(D) **ASSERTING ANY RIGHT OF SETOFF OR SUBROGATION OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DEBTOR OR AGAINST THE PROPERTY OR ESTATE OF THE DEBTOR OR REORGANIZED DEBTOR, EXCEPT TO THE EXTENT A RIGHT TO SETOFF OR SUBROGATION IS ASSERTED WITH RESPECT TO A TIMELY FILED PROOF OF CLAIM; OR**

(E) **COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND IN RESPECT OF ANY CLAIM AGAINST THE DEBTOR OR CAUSE OF ACTION THAT IS DISCHARGED HEREBY.**

**8.3     No Bar to Claims Against Third Parties**. Holders of Claims or Interests against the Debtor are not barred or otherwise enjoined by the Plan from pursuing any recovery against Persons that are not the Debtor, except as provided in the NZ Settlement Agreement.

**8.4     Exculpation.**

**To the fullest extent permitted by section 1125(e) of the Bankruptcy Code, the Debtor and the Reorganized Debtor, and each of their respective shareholders, officers, directors, employees and Professionals (including individuals within such firms) (each, an "Exculpated Party") shall neither have nor incur any liability to any Person for any act taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, administration, confirmation or consummation of the Plan, the Disclosure Statement, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, or any act taken or omitted to be taken during the Chapter 11 Case, except for (i) acts or omissions as a result of willful misconduct or gross negligence and (ii) liability of any released person for any debt owed to the United States Government, any state, city or municipality arising under (a) the**

19

**Internal Revenue Code or any state, city or municipal tax code, (b) the environmental laws of the United States or any state, city or municipality or (c) laws regarding the regulation of securities administered by the SEC and (d) any criminal laws of the United States, any state, city or municipality. From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute, and may be submitted as, a complete defense to any claim or liability released pursuant to the Plan.**

Notwithstanding anything herein to the contrary, no Exculpated Party shall be exculpated from any liability resulting from any act or omission that is determined by Final Order to have constituted fraud, willful misconduct, gross negligence, criminal conduct, or limits the liability of any Person pursuant to N.Y. Comp. Codes R. & Regs. Tit. 22 § 1200.8 Rule 1.8(h)(1) (2009) and any other statutes, rules or regulations dealing with professional conduct to which such professionals are subject; provided that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement.

### 8.5    Release of Liens, Claims and Encumbrances.

Except as otherwise provided in the Plan or in any contract, instrument, or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all judgments, mortgages, Liens, pledges security interests and other encumbrances on any property of the Estates shall be fully discharged.

### 8.6    No Release of Plan Obligations.

Nothing herein shall constitute a release any post-Effective Date obligations of Person under the Plan or any document, instrument or agreement executed to implement the Plan, including, without limitation, the obligations under the NZ Settlement Agreement.

### 8.7    No Modification of Res Judicata Effect.

The provisions of this Article 8 are not intended, and shall not be construed, to modify the *res judicata* effect of any order entered in the Chapter 11 Case, including, without limitation, the Confirmation Order and any order finally determining Professional Fee Claims to any Professional.

## ARTICLE 9 - PROVISIONS GOVERNING DISTRIBUTIONS

### 9.1    Payment in U.S. Dollars.

All Cash payments required under the Plan shall be made in U.S. dollars by checks drawn on a domestic bank selected by the Debtor in accordance with the Plan or by wire transfer from a domestic bank, at the Debtor's option.

20

**9.2**     **Distributions Only on Business Days**.

If any Distribution called for under this Plan is due on a day other than a Business Day, such Distribution shall instead be made the next Business Day.

**9.3**     **Transmittal of Payments and Notices**.

All Distributions shall be made to the Holder of a Claim by regular first-class mail, postage prepaid, in an envelope addressed to such holder at the address listed on its Proof of Claim filed with the Bankruptcy Court or, if no Proof of Claim was filed, (i) at the address listed on the Debtor's Schedules, or (ii) at such address that a Holder of a Claim provides to the Debtor after the Effective Date in writing and files at least fifteen (15) business days prior to a Distribution Date.   The Debtor shall have no duty to ascertain the mailing address of any Holder of a Claim other than as set forth herein. The date of payment or delivery shall be deemed to be the date of mailing.  Payments made in accordance with the provisions of this Section shall be deemed made to the Holder regardless of whether such Holder actually receives the payment.

**9.4**     **Record Date for Distributions**.

Except as otherwise provided in a Final Order of the Bankruptcy Court, a transferee of a Claim that is transferred pursuant to Bankruptcy Rule 3001 with appropriate filings ("Claim Transfer Document") made on or before the Record Date shall be treated as the Holder of the Claim for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer(s) may not have expired prior to the Record Date.  The Debtor shall have no obligation to recognize any transfer of any Claim occurring after the Record Date.   In making a Distribution with respect to any Claim, the Debtor shall be entitled to recognize and deal for all purposes hereunder only with the Person who is listed on the Proof of Claim filed with respect to such Claim, on the Debtor's Schedules as the Holder thereof, and upon such other evidence or record of transfer or assignment filed as of the Record Date.

**9.5**     **Unclaimed Distributions**.

Any Unclaimed Distribution (including a Distribution made by check that is not cashed or otherwise negotiated within ninety (90) days after the Distribution Date shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code.

Any such Unclaimed Distribution shall revest in the Reorganized Debtor pursuant to section 347(b) of the Bankruptcy Code. Upon such revesting, the Claim of any Holder or its successors and assigns with respect to such property shall be cancelled, discharged and forever barred notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary.

**9.6**     **Claims Administration.**

(a) Objections to Claims.  The Debtor or Reorganized Debtor may dispute, object to, compromise or otherwise resolve all Claims.  Unless otherwise provided in the

Plan or ordered by the Bankruptcy Court, any objections to Claims (other than Administrative Claims) shall be filed on or before the Claims Objection Bar Date.

(b) Reservation of Rights.   Unless a Claim is specifically Allowed prior to or after the Effective Date, the Debtor reserves any and all objections to any and all Claims and motions or requests for the payment of Claims, whether administrative, secured or unsecured, including without limitation any and all objections to the validity or amount of any and all alleged Administrative Expense Claims, Priority Tax Claims, or Non-Tax Priority Claims, liens and security interests, whether under the Bankruptcy Code, other applicable law or contract.  The failure to object to any Claim prior to the Effective Date shall be without prejudice to the Debtor's and Reorganized Debtor's right to contest or otherwise defend against such Claim in the Bankruptcy Court when and if such Claim is sought to be enforced by the holder of the Claim.

(c)   Filing Objections.  An objection to a Claim shall be deemed properly served on the claimant if the Debtor or Reorganized Debtor effects service of any such objection in accordance with Rule 3007 of the Bankruptcy Rules by mailing or otherwise delivering the objection and a notice of hearing thereon to the claimant at the address set forth on such claimant's Proof of Claim at least thirty (30) days prior to the hearing thereon.

(d)   Determination of Claims.  Except as otherwise agreed by the Debtor or Reorganized Debtor, any Claim as to which a Proof of Claim or motion or request for payment was timely filed in the Chapter 11 Case may be determined and liquidated after the Effective Date pursuant to (i) an order of the Bankruptcy Court (which order has not been stayed, reversed or amended and as to which determination or any revision, modification or amendment thereof, and the time to appeal or seek review or rehearing thereof, has expired, and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending), or (ii) applicable non-bankruptcy law.  Any Claim determined to be an Allowed Claim after the Effective Date pursuant to this section shall be treated as an Allowed Claim in accordance with the Plan.

(e)   No Distribution Pending Allowance. If an objection to a Claim or a portion thereof is filed as set forth in this Article 9 or the Claim otherwise remains a Disputed Claim, except as otherwise provided in a Final Order of the Bankruptcy Court, no payment or Distribution provided under the Plan shall be made on account of such Claim or portion thereof, as applicable, unless and until such Disputed Claim becomes an Allowed Claim.

**9.7**   **Disputed Claims**.

(a) Except to the extent the Court determines that a lesser amount is adequate, the Debtor shall, on each Distribution Date, deposit in the Disputed Claims Reserve established by the Debtor Cash equal to the Distributions that would have been made to holders of Disputed Claims if such Claims were Allowed Claims in their full amounts or such lower amount as to which the holder of such Claim has agreed in writing or, in the case where any such Claim is unliquidated and/or contingent, the greater of (i)

$1, and (ii) such other amount as is reserved by order of the Bankruptcy Court made upon motion of the Holder of a Disputed Claim.

(b) For purposes of effectuating the provisions of this Section 9.7 and the Distributions to holders of Allowed Claims, the Court, on or prior to the Effective Date, or thereafter upon the request of any holder of a Claim or the Debtor may liquidate the amount of Disputed Claims pursuant to section 502(c) of the Bankruptcy Code, in which event the amounts so fixed or liquidated shall be deemed to be the aggregate amounts of the Disputed Claims pursuant to section 502(c) of the Bankruptcy Code for purposes of Distribution under this Plan and for purposes of the Disputed Claims Reserve.

(c) When a Disputed Claim becomes an Allowed Claim, there shall be distributed to the holder of such Allowed Claim, in accordance with the provisions of this Plan (but in no event later than the next succeeding Distribution Date), Cash in the amount of all Distributions to which such holder would have been entitled if such holder's Claim were Allowed on the Effective Date.

(d) To the extent that a Disputed Claim ultimately becomes an Allowed Claim and is entitled to a Distribution in an amount less than the amount reserved for such Disputed Claim, any excess shall revest in the Reorganized Debtor.

(e) The Disputed Claims Reserve shall be treated as a disputed ownership fund, within the meaning of Treasury Regulation section 1.468B-9, for all purposes associated with taxation.

(f) Except as expressly set forth in the Plan, or otherwise agreed to in writing or ordered by the Court, the Debtor shall not have any duty to fund the Disputed Claims Reserve.

(g) The Debtor shall pay, or cause to be paid, out of the funds held in the Disputed Claims Reserve, any tax imposed by any federal, state, or local taxing authority on the income generated by the funds or property held in the Disputed Claims Reserve. The Debtor shall file, or cause to be filed, any tax or information return related to the Disputed Claims Reserve that is required by any federal, state, or local taxing authority.

### 9.8    Claims by Persons From Which Property Is Recoverable.

Unless otherwise agreed to by the Reorganized Debtor or ordered by the Bankruptcy Court, any Claims held by any Person or Entity from which property is recoverable under sections 542, 543, 550 or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and any Holder of such Claim may not receive any Distributions on account of such Claim until such time as such Cause of Action against that Person has been resolved.

**9.9**     **Timing of Distributions on Disputed Claims Subsequently Allowed**.

In the event that a Disputed Claim is Allowed, in whole or in part, after the Effective Date, a Distribution shall be made on account of such Allowed Claim on the next Business Day that is fifteen (15) business days after such Claim is Allowed.

**9.10**     **Disputed Distribution**.

If a dispute arises as to the identity of the Holder of an Allowed Claim who is to receive a Distribution, the Debtor may, in lieu of making such Distribution to any Holder, hold such amount until the dispute is resolved by Final Order of the Bankruptcy Court or by written agreement among the parties to such dispute.

**9.11**     **Claims Filed After the Applicable Bar Date**.

Except as otherwise specifically provided herein or in a Final Order of the Bankruptcy Court, any and all Proofs of Claim filed after the applicable Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order or approval of the Bankruptcy Court, and any and all Holders of such Claims shall not receive any Distributions on account of such Claims, unless such late-filed Proof of Claim has been deemed timely filed by a Final Order of the Bankruptcy Court.

**9.12**     **Amendment to Proofs of Claim**.

On or after the Effective Date, a Proof of Claim may not be amended (other than solely to update or correct the name or address of the Holder of such Claim) without the prior authorization of the Bankruptcy Court or the Reorganized Debtor, and any such amended Proof of Claim filed without such prior authorization shall be deemed disallowed in full and expunged without any further notice to or action, order or approval of the Bankruptcy Court.

**9.13**     **Setoff and Recoupment**.

Except as otherwise provided in the Plan, the Debtor or Reorganized Debtor may, but shall not be required to, set off against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any Claims, defenses or Causes of Action of any nature whatsoever that the Debtor or Reorganized Debtor may have, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor or Reorganized Debtor of any right of setoff or recoupment against the holder of any Claim.

**9.14**     **Compliance With Tax Withholding and Reporting Requirements**.

With respect to all Distributions made under the Plan, the Debtor and Reorganized Debtor will comply with all withholding and reporting requirements of any federal, state, local or foreign taxing authority.

**9.15**     **No Postpetition Interest on Claims.**

Unless otherwise specifically provided for in the Plan or the Confirmation Order, required by applicable law, or agreed to by the Debtor or the Reorganized Debtor, as applicable, postpetition interest shall not accrue or be paid on any Claim, and no Holder of a Claim against the Debtor shall be entitled to interest accruing on, or after the Petition Date, on any such Claim. Further, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date an initial or final Distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

## ARTICLE 10 - PLAN INTERPRETATION AND CONFIRMATION

**10.1**     **Procedures Regarding Objections to Designation of Classes as Impaired or Unimpaired**.

In the event the designation of the treatment of a Class as impaired or unimpaired is objected to, the Bankruptcy Court shall determine the objection and voting shall be permitted or disregarded in accordance with the determination of the Bankruptcy Court.

**10.2**     **Withdrawal and Modification of Plan**.

This Plan may be withdrawn by the Debtor at any time prior to the Confirmation Date.   The Debtor or Reorganized Debtor may modify the Plan in any manner consistent with section 1127 of the Bankruptcy Code prior to Consummation thereof.  Upon request by the Debtor or Reorganized Debtor, the Plan may be modified after Consummation with the approval of the Bankruptcy Court, provided that such modification does not affect the essential economic treatment of any Person that objects in writing to such modification.

**10.3**     **Governing Law**.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or the Plan, the laws of the State of New York applicable to contracts executed in such State by residents thereof and to be performed entirely within such State shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with this Plan.

**10.4**     **Presumed Acceptance of Plan.**

Classes 1, 2, 3 and 4 are unimpaired under the Plan. As a result, pursuant to section 1126(f) of the Bankruptcy Code holders of claims in Classes 1, 2, 3 and 4 are conclusively presumed to have accepted the Plan and the Debtor will not solicit acceptances of the Plan with respect to such classes.

## ARTICLE 11 - RETENTION OF JURISDICTION BY BANKRUPTCY COURT

**11.1**    From the Confirmation Date until entry of a final decree closing the Debtor's Chapter 11 Case, the Bankruptcy Court shall retain such jurisdiction to the

maximum extent legally permissible over the Chapter 11 Case for the following purposes:

(a) to hear and determine any and all objections to the allowance of any Claim or Administrative Claim, or any controversy as to the classification of Claims or any matters which may directly, indirectly or contingently affect the obligations of the Debtor to any Creditors, holders of Claims, or other parties in interest;

(b) to hear and determine any and all applications for compensation and reimbursement of expenses by Professionals;

(c) to hear and determine any and all pending motions for the assumption or rejection of executory contracts and unexpired leases, and to fix any Claims resulting therefrom;

(d) to adjudicate through final judgment such contested matters and adversary proceedings as may be pending or subsequently initiated in the Court;

(e) to enforce and interpret the provisions of this Plan and the Confirmation Order;

(f) to issue any injunction or other relief appropriate to implement the intent of the Plan, and to enter such further orders enforcing any injunctions or other relief issued under the Plan or pursuant to the Confirmation Order;

(g) to modify the Plan pursuant to section 1127 of the Bankruptcy Code and the applicable Bankruptcy Rules;

(h) to correct any defect, cure any omission, or reconcile any inconsistency in this Plan or in the Confirmation Order as may be necessary to carry out the purposes and the intent of this Plan;

(i) to interpret and determine such other matters as the Confirmation Order may provide for, or as may be authorized under the Bankruptcy Code;

(j) to enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, reversed, revoked, modified or vacated;

(k) to hear and determine any dispute regarding the existence, nature or scope of the Debtor's discharge;

(l) to enforce all orders previously entered in the Chapter 11 Case by the Bankruptcy Court; and

(m) to hear any other matter not inconsistent with the Bankruptcy Code.

26

## ARTICLE 12 - MISCELLANEOUS PROVISIONS

**12.1  Headings**.

Headings are utilized in this Plan for the convenience of reference only, and shall not constitute a part of this Plan for any other purpose.

**12.2  No Attorneys' Fees**.

No attorneys' fees with respect to any Claim or Interest shall be payable under the Plan, except as expressly specified herein or Allowed by a Final Order of the Bankruptcy Court.

**12.3  Notices**.

Except as otherwise specified in the Plan, all notices in connection with the Plan shall be in writing and shall be deemed to have been given when received or, if mailed, five (5) business days after the date of mailing. All communications shall be deemed sent if sent to the Debtor or Reorganized Debtor at the following address:

If to the Debtor:

ZELOUF INTERNATIONAL CORP.
225 West 37th Street, 10th Floor
New York, New York 10018
Attn: Danny Zelouf, President


With a copy to (which shall not constitute service):

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP
200 West 41st Street, 17th Floor
New York, New York 10036
Attn: Tracy L. Klestadt, Esq.

**12.4  Claims In Dollars**.

Any Claims asserted in foreign currencies shall be converted to United States Dollars in accordance with the prevailing exchange rates published by the Wall Street Journal on the Confirmation Date.

**12.5  Binding Effect**.  The rights, benefits, and obligations of any Person named or referred to in the Plan, or whose actions may be required to effectuate the terms of the Plan, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person (including, but not limited to, any trustee appointed for the Debtor under chapter 7 or 11 of the Bankruptcy Code).  The Confirmation Order shall provide that the terms and provisions of the Plan and the Confirmation Order shall survive and remain effective after entry of any order which may be entered converting the Debtor's Bankruptcy Case to a case under chapter 7 of the Bankruptcy Code, and the terms and provisions of the Plan shall continue to be effective in this or any superseding case under the Bankruptcy Code.

Dated: New York, New York
      November 12, 2015

ZELOUF INTERNATIONAL CORP.


By: */s/ Danny Zelouf*_____
      Danny Zelouf
      President


KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP


By: */s/ Tracy L. Klestadt*_____
      Tracy L. Klestadt
      Joseph C. Corneau
200 West 41st Street, 17th Floor
New York, New York 10036
Tel:  (212) 972-3000
Fax: (212) 972-2245

*Attorneys for the Debtor and Debtor-in-Possession*

## **Exhibit B**

**Liquidation Analysis**

**Liquidation Analysis**

*Zelouf International Corp*

Case #15-11501 - Southern District of NY (SHL)

| | Balance Sheet - 9/30/2015 (Book Value) | Chapter 7 Best Case | | Chapter 7 Worst Case | | Chapter 11 Plan of Reorganization | |
|---|---|---|---|---|---|---|---|
| **I. Assets Available for Distribution** | | | | | | | |
| A.  Cash & Equivalents | $ 4,019,506 | 100.00% | $ 4,019,506 | 100.00% | $ 4,019,506 | 100.00% | $ 4,019,506 |
| B.  Accounts Receivable | 6,379,185 | 50.00% | 3,189,592 | 20.00% | 1,275,837 | 90.00% | 5,741,266 |
| C.  Inventory | 1,484,179 | 25.00% | 371,045 | 10.00% | 148,418 | 0.00% | - |
| D.  Loan Receivable | 2,481,563 | 100.00% | 2,481,563 | 80.00% | 1,985,250 | 0.00% | - |
| E.  Partial Payment of Settlement - Restricted | 3,000,000 | 0.00% | | 0.00% | | 0.00% | - |
| F.  Chapter 5 Claims | *Unknown* | | *Unknown* | | *Unknown* | 0.00% | - |
| G.  Cash from Continuing Operations | | | | | | | 10,547,846 |
| **Proceeds Available for Distribution** | **$ 17,364,433** | | **$ 10,061,706** | | **$ 7,429,011** | | **$ 20,308,618** |
| | | | | | | | |
| **II. Distribution of Proceeds** | | | | | | | |
| *Chapter 7 Expenses* | | | | | | | |
|   U.S. Trustee Fees | | | 30,000 | | 30,000 | | - |
|   Professional Fees | | | 50,000 | | 75,000 | | - |
|   Wind Down [2] | | | 603,000 | | 943,000 | | - |
| | | | | | | | |
| *Chapter 11 Expenses* | | | | | | | |
|   U.S. Trustee Fees | | | 30,000 | | 60,000 | | 30,000 |
|   Professional Fees | | | 400,000 | | 500,000 | | 400,000 |
| | | | | | | | |
| *Priority Claims* | | | | | | | |
|   Tax | | | 2,960 | | 2,960 | | 2,960 |
|   503(b)(9) | | | - | | - | | - |
| | | | | | | | |
| **Total Administrative & Priority** | | | **$ 1,115,960** | | **$ 1,610,960** | | **$ 432,960** |
| | | | | | | | |
| *Unsecured Claims* | | | | | | | |
|   General Unsecured Claims | | | 4,329,599 | | 4,329,599 | | 4,329,599 |
|   Nahal Zelouf Judgment [1] | | | 7,031,438.28 | | 7,031,438.28 | | 8,000,000 |
|   Interest | | | - | | - | | - |
|   Lease Rejection | | | 364,830 | | 364,830 | | - |
|   Contingency | | | 216,480 | | 432,960 | | 216,480 |
| | | | | | | | |
| **Total Claims** | | | **$ 11,942,347** | | **$ 12,158,827** | | **$ 12,546,078** |
| | | | | | | | |
| % Recovery to General Unsecured Creditors | | | 74.91% | | 47.85% | | 100.00% |

**Notes**

1 This amount is net of the $3,000,000 the Debtor transferred into an Escrow account in accordance with the Settlement Agreement.
  In the event the Debtor is unable to confirm a plan, under the terms of the Settlement Agreement, the judgment creditor is
  entitled to the $3,000,000 in escrow and the judgment amount would be reinstated.

2 Wind Down expenses assumes Payroll, Rent and Contingency for two months in best case and three months
  in the worst case scenario.

**<u>Exhibit C</u>**

**Projections**

**12-Month Projection (December 2015 through November 2016)**
*Zelouf International Corporation*
Case #15-11501 - Southern District of NY (SHL)

| Period Ending Actual/Projection | 2015 December Projection | January Projection | February Projection | March Projection | April Projection | May Projection | June Projection | July Projection | August Projection | September Projection | October Projection | November Projection | 12-Month Projection |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Monthly Summary** | | | | | | | | | | | | | |
| **Sales** | | | | | | | | | | | | | |
| Net Sales [1] | $ 2,990,235 | $ 3,740,415 | $ 3,740,415 | $ 3,740,415 | $ 3,740,415 | $ 3,740,415 | $ 3,057,530 | $ 3,057,530 | $ 3,057,530 | $ 3,057,530 | $ 3,057,530 | $ 3,057,530 | $ 40,037,488 |
| **Total Net Sales** | $ 2,990,235 | $ 3,740,415 | $ 3,740,415 | $ 3,740,415 | $ 3,740,415 | $ 3,740,415 | $ 3,057,530 | $ 3,057,530 | $ 3,057,530 | $ 3,057,530 | $ 3,057,530 | $ 3,057,530 | $ 40,037,488 |
| Cost of Goods Sold | 1,509,496 | 1,888,193 | 1,888,193 | 1,888,193 | 1,888,193 | 1,888,193 | 1,543,467 | 1,543,467 | 1,543,467 | 1,543,467 | 1,543,467 | 1,543,467 | 20,211,260 |
| **Gross Profit** | $ 1,480,739 | $ 1,852,222 | $ 1,852,222 | $ 1,852,222 | $ 1,852,222 | $ 1,852,222 | $ 1,514,063 | $ 1,514,063 | $ 1,514,063 | $ 1,514,063 | $ 1,514,063 | $ 1,514,063 | $ 19,826,228 |
| | 49.52% | 49.52% | 49.52% | 49.52% | 49.52% | 49.52% | 49.52% | 49.52% | 49.52% | 49.52% | 49.52% | 49.52% | 49.52% |
| **Disbursements** | | | | | | | | | | | | | |
| Officers Compensation [2] | 161,364 | 162,762 | 162,762 | 162,762 | 162,762 | 162,762 | 162,762 | 162,762 | 162,762 | 162,762 | 162,762 | 162,762 | 1,951,740 |
| Reduction in Officers' Compensation | (103,364) | (101,862) | (101,862) | (101,862) | (101,862) | (101,862) | (101,862) | (101,862) | (101,862) | (101,862) | (101,862) | (101,862) | (1,223,840) |
| Salaries & Commissions [3] | 270,237 | 251,534 | 251,534 | 251,534 | 251,534 | 251,534 | 251,534 | 276,319 | 276,319 | 276,319 | 276,319 | 276,319 | 3,161,036 |
| Payroll Taxes/Expenses & Employee Benefits [4] | 49,236 | 46,865 | 46,865 | 46,865 | 46,865 | 46,865 | 46,865 | 50,583 | 50,583 | 50,583 | 50,583 | 50,583 | 583,340 |
| Rent & Other Occupancy Costs [5] | 63,902 | 70,402 | 70,402 | 70,402 | 70,402 | 70,402 | 70,402 | 70,402 | 70,402 | 70,402 | 70,402 | 70,402 | 838,330 |
| Freight-Out & Shipping Supplies | 45,777 | 66,947 | 66,947 | 66,947 | 66,947 | 66,947 | 54,724 | 57,692 | 57,692 | 57,692 | 57,692 | 57,692 | 723,692 |
| Insurance | 8,333 | 9,167 | 9,167 | 9,167 | 9,167 | 9,167 | 9,167 | 9,167 | 9,167 | 9,167 | 9,167 | 9,167 | 109,167 |
| Interest & Other Financing Expenses | 3,919 | 10,513 | 10,513 | 10,513 | 10,513 | 10,513 | 8,594 | 8,018 | 8,018 | 8,018 | 8,018 | 8,018 | 105,166 |
| Auto Expenses [6] | 2,660 | 2,660 | 2,660 | 2,660 | 2,660 | 2,660 | 2,660 | 2,660 | 2,660 | 2,660 | 2,660 | 2,660 | 31,924 |
| Professional Fees [7] | 425,000 | 18,750 | 38,750 | 18,750 | 18,750 | 18,750 | 56,250 | 18,750 | 18,750 | 18,750 | 18,750 | 18,750 | 688,750 |
| U.S Trustee | 30,000 | - | - | 30,000 | - | - | - | - | - | - | - | - | 60,000 |
| Other [8] | 35,764 | 56,327 | 56,327 | 56,327 | 56,327 | 56,327 | 46,044 | 48,553 | 48,553 | 48,553 | 48,553 | 48,553 | 606,210 |
| **Operating Expenses** | $ 992,829 | $ 594,065 | $ 614,065 | $ 624,065 | $ 594,065 | $ 594,065 | $ 607,140 | $ 603,044 | $ 603,044 | $ 603,044 | $ 603,044 | $ 603,044 | $ 7,635,515 |
| **Operating Profit** | $ 487,911 | $ 1,258,157 | $ 1,238,157 | $ 1,228,157 | $ 1,258,157 | $ 1,258,157 | $ 906,923 | $ 911,019 | $ 911,019 | $ 911,019 | $ 911,019 | $ 911,019 | $ 12,190,713 |
| **Other Income** | | | | | | | | | | | | | |
| Other Income, Net [9] | 18,197 | 18,211 | 18,211 | 18,211 | 18,211 | 18,211 | 18,211 | 18,211 | 18,211 | 18,211 | 18,211 | 18,211 | 218,518 |
| Income Taxes [10] | (75,916) | (191,455) | (188,455) | (186,955) | (191,455) | (191,455) | (138,770) | (139,385) | (139,385) | (139,385) | (139,385) | (139,385) | (1,861,385) |
| **Net Income** | $ 430,192 | $ 1,084,912 | $ 1,067,912 | $ 1,059,412 | $ 1,084,912 | $ 1,084,912 | $ 786,364 | $ 789,846 | $ 789,846 | $ 789,846 | $ 789,846 | $ 789,846 | $ 10,547,846 |

[1]  Debtor projects a 2% annual growth to Revenue;  net of amount due from Non-Debtor Affiliates.

[2]  Projection for Officer's Compensation reflect the 2014 W2 for Management, less a reduction and assumes a  5% annual increase year over year.

[3]  Project 5% increase in employee salaries each year.

[4]  Payroll Taxes/Expenses & Employee Benefits forecast amounts are calculated based on 15% of the projected payroll.

[5]  Rent consists of monthly amounts for the NYC office ($33,500) and the warehouse located in Bloomfield, NJ ($30,402.49).  Rent increases to $40,000 per month per current discussions with landlord under a new lease for the NYC office.
    The warehouse current lease expires in February 2017.

[6]  Projected monthly amounts for Auto Expenses are made up of two payments to BMW Financial Services ($1,034.74) and Audi Financial Services ($1,625.61).  Projection assumes the Company will incur approximately $32,000/yr for car leases.

[7]  Professional fees of $425,000 in December 2015 are estimates of Debtor Chapter 11 professionals paid upon confirmation.  Remaining period professional fees represent Debtor's ordinary course professionals.

[8] Other Expenses, includes, but is not limited to expenses for:  Design expense,  office expenses, repairs & maintenance, telephone, travel & entertainment,  postage, advertising , sample expense, shipping and stationary.

[9]  Other income represent amount due to/from Non-Debtor Affiliates.

[10]  Project 15% of Net Income.